UNITED STATES of America, Appellee,

v.

Carmine PERSICO, Jr., Salvatore Albanese, Hugh McIntosh, Ralph Spero and George La Fante, Defendants-Appellants.

No. 395, Docket 29271.

United States Court of Appeals Second Circuit.

Argued March 12, 1965.

Decided July 23, 1965.

Jerome C. Ditore, Asst. U. S. Atty. for the Eastern District of New York (Joseph P. Hoey, U. S. Atty., Eastern District of New York, on the brief), for appellee.

Maurice Edelbaum, New York City, for appellant Persico.

Jerome Lewis, Brooklyn, N. Y., for appellant La Fante.

Frances T. Wolff, New York City, for appellants Albanese and Spero.

Michael P. Direnzo, New York City, for appellant McIntosh.

Before SMITH and MARSHALL, Circuit Judges, and METZNER, District Judge.*

METZNER, District Judge:

Defendants appeal from judgments of conviction after a trial before Rosling, J., and a jury. Defendants Persico, Albanese, McIntosh and Spero were tried and convicted on a substantive count of robbery of merchandise moving in interstate commerce (18 U.S.C. § 1951),[1] and a conspiracy count. Defendant La Fante was tried and convicted solely on the conspiracy count. Because of errors in the charge, we reverse.

The defendants have been tried four times on an indictment filed on April 28, 1960.[2] The crime was committed on July 28, 1959. The first trial lasted twelve days, but the jury failed to agree on a verdict. The second trial lasted nine days and resulted in convictions of all defendants on both counts except La Fante, who was acquitted on the substantive count. The convictions were reversed on appeal. United States v. Persico, 305 F.2d 534 (2d Cir. 1962). The third trial ended in a mistrial after the eighth day as to defendants Persico, Albanese and Spero. The trial was concluded three days later as to the defendants McIntosh and La Fante, but the jury failed to agree on a verdict. The fourth trial lasted about sixteen weeks.

On the appeal from the convictions after the second trial, this court stated (305 F.2d at 536–537):

"The Government's case rested entirely upon the uncorroborated testimony, inconsistent with his earlier

---

* Sitting by designation.

1. The pertinent part of § 1951 reads as follows: "Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do * * * shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

2. In Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949), the Court reversed and remanded for a new trial a case which had already been tried four times.

testimony in some respects, of an accomplice and co-conspirator who had the strongest possible reasons to become a Government witness. We must therefore scrutinize any claimed error with extreme care since there is grave possibility of prejudice to the defendants in a case such as this by error which might in other circumstances be deemed relatively minor."

It further stated at page 540:

"While the judge has an active role to play in the search for truth through the trial process, he must take great pains to avoid giving the jury an impression that he is partisan. United States v. DeSisto, 289 F.2d 833 (2 Cir., 1961)."

Both of these observations are apt in reviewing the 9,595 pages of transcript on this fourth trial.

## I

The charge to the jury on this trial took thirteen hours over a two-day period, including an hour and a half for lunch each day. The third day was devoted to disposing of exceptions to the charge in the absence of the jury. This session lasted fourteen hours, including recesses for lunch and dinner. On the fourth day the court gave a supplemental charge which covered a four-hour period, inclusive of a luncheon recess.

 The purpose of a charge is adequately, yet succinctly, to instruct the jury as to its function, which is the independent determination of the facts, and the application of the law, as charged by the court, to the facts, as found by the jury.[3] Repetitious and unnecessarily long charges are confusing to a jury and prevent it from properly exercising its

function. Several hundred pages of the charge were devoted to references to portions of the testimony, either by way of summary or direct quotation, for the purpose of marshaling the evidence or explaining points of law stated by the court. The result was that the jury must necessarily have been confused, and unable to exercise its independent recollection of all the testimony which is supposed to govern its deliberations. However, the reversal of the judgments in this case does not rest solely on this ground in view of the specific errors in the charge, requiring a new trial.

## II

The Government's case was based primarily on the testimony of the accomplice Vaccaro, who had pleaded guilty to the indictment after the first trial. He had a long criminal record and was in state prison awaiting sentence on another crime when he furnished information about the instant case to the Government.

The credibility of his testimony was, of course, the central issue in the trial. The court charged the jury to this effect when it said:

"That is, on the acceptance of Vaccaro's testimony rests the only possibility of finding guilt."

On several occasions during references to his testimony, the court followed the pattern of telling the jury that Vaccaro is a bad man and his testimony should be viewed with suspicion, but also telling the jury that they should consider whether he is really lying here,[4] or mouthing words given to him by the FBI,[5] or committing perjury with the Government's acquiescence.[6] Each of these ref-

3. "Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depended on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria." Bollenbach v. United States, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

4. "How could he know if he wasn't there?"

5. "Did the FBI feed it to him?"

6. "Is the Government indifferent to whether or not he commits perjury—and if he does, so long as he commits perjury that is helpful to the Government? Is that something that you must consider? That

erences would conclude with the usual cautionary words.[7] The alternatives given by the court to the jury to disbelieving Vaccaro could only lead to the conclusion that Vaccaro was telling the truth.

Two witnesses who worked at the truck terminal were offered by the defense to dispute Vaccaro's testimony as to where the truck was parked. Vaccaro had testified that the truck was parked on the Nevins Street side of the terminal and left from there on the morning of the hijacking. This was corroborated in part by Gehring, a Government witness. These defense witnesses placed the truck on the Union Street side of the terminal. The court charged that if the truck was on the Union Street side a verdict of acquittal should follow. However, it went on to tell the jury that one of the defendants' witnesses was only the pusher of a handtruck as opposed to Gehring, who was the head of the terminal and the superior of the witness. The court, referring to Gehring, said,

"having a position of greater scope * * * is [he] lying to help the prosecution. It is for you to say. The Court expresses no opinion."

In spite of its disclaimer, the court did convey to the jury that the respective levels of employment of the witnesses could only lead to the conclusion that Gehring's testimony should be believed.

Because there were three prior trials of this case, the record is replete with references to trial testimony previously given. There was also reference to Grand Jury testimony and prior statements to Government agents, all with a view to showing inconsistencies through which an attack on Vaccaro's credibility could be made. Here again, while the court gives some proper instructions in aiding the jury to evaluate inconsistencies, confusion is created by other portions of the charge on this subject. The court casts grave doubt as to whether prior inconsistent statements have any value insofar as credibility is concerned because the jury hasn't seen the entire testimony or FBI statement,

"and there is no way of determining whether statements were taken out of context or whether you have a real conflict; and I express no opinion on the subject." [8]

If the cross-examiner has failed to reflect correctly what was in the prior testimony by incomplete or unfair reading to the witness, then the Government may either object at that time or correct the error on redirect examination by reading other portions of the prior testimony.[9] Failure to follow this procedure would normally result in the inference that the cross-examiner fairly represented the prior testimony. However, the court's instruction in effect required

---

is not something that bears upon Vaccaro; that bears upon the Government's prosecution of this case."

7. "You are the sole judges of the facts and it is your inferences that are to be deducted from the facts."

8. The court went on to charge: "It is only where the claim is *distortion and incompleteness, that a fair version is not being presented,* or you are being challenged as not having on any occasion said what you are saying from the witness stand, then it becomes necessary to inquire into what was indeed said upon these earlier occasions; *and if the attorneys who challenge veracity do so with neither you nor the Court seeing the content of the document submitted* —questions are put to the witness and he is held to his answer—you may hesi-

tate to make a complete or final determination. Nevertheless, it is for you to make that decision as finders of the facts." (Emphasis supplied.)

A few pages later the court said that if an inconsistency is not found "you would then have a standard by which you may possibly assess the effectiveness of other interrogation along the same lines, where the documents are not before you for examination and where, at most, you possibly may have impressions rather than the text of papers that you might require for your evaluation of the situation, or a completer testimony from the witness stand than was elicited in the cross-examination."

9. Cf. United States v. Lev, 276 F.2d 605, 608 (2d Cir.), cert. denied, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960).

the jury to draw an opposite inference. This misleading instruction was repeated in the supplemental charge.[10]

 The guidelines adopted by the court in this portion of the charge, designed to aid the jury in determining the crucial issue of the credibility of the Government witnesses, were incorrect, completely unfair to the defense and a usurpation of the function of the jury.[11] Repetition of the admonition that the jury is the sole judge of the facts does not cure this error.[12]

### III

In that portion of the charge concerning the weight to be given prior inconsistent statements in determining the credibility of a witness, the court stated that:

"A witness is presumed to tell the truth until the contrary is shown."

During the day devoted to exceptions to the charge, defense counsel objected to this statement. The court referred to the form of charge suggested by Judge Mathes (see 27 F.R.D. 39, No. 3.01). The sentence used by the court does appear in the suggested form of charge, but the charge as given omitted the succeeding sentence in the form which reads:

"But this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given, or by contradictory evidence."

In the ensuing discussion between the court and counsel, the court indicated that the presumption as to a witness is a corollary to the presumption of innocence, because otherwise it would be presumed that a witness is a perjurer. The court then told counsel that it would instruct the jury that no witness is presumed to tell the truth and that it would instruct the jury in a proper form. On the following day the court gave its supplemental charge on this matter.[13] It

---

10. "I do tell you additionally that as far as I have been able to understand the testimony as it came in with these limitations of incompleteness—*we don't have the entire record of the trials before us; we didn't have the opportunity for a detailed search or examination of documents* that might or might not throw additional light on what is claimed to be an inconsistency or a falsification or a deliberate falsification. *With those handicaps it becomes necessary to analyze, and analyze carefully what you heard.* Make sure you heard it from the witness stand. That doesn't mean you should accept it after you have heard it, but at least hear it from there and *don't have it come to you in the form of questions or any other extraneous suggestions or implications that do not constitute evidence.*" (Emphasis supplied.)

11. "* * * the court here conveyed to the jury too strong an impression of the court's belief in the defendant's probable guilt to permit the jury freely to perform its own function of independent determination of the facts." United States v. DeSisto, 289 F.2d 833, 835 (2d Cir. 1961).

12. "Such admonitions may offset brief or minor departures from strict judicial impartiality, but cannot be considered suf-

ficient here." United States v. Brandt, 196 F.2d 653, 656 (2d Cir. 1952).

13. The complete text of this part of the charge reads as follows:
"In that connection and touching on another charge, another instruction that I gave, the Court comes back to the subject of presumption of innocence. These defendants are presumed to be innocent unless and until, if at all in your deliberations, the proof establishes to your satisfaction their guilt beyond a reasonable doubt, taking into account all the evidence in the case, all the instructions you have been given.
"But they are not the only ones who have a presumption of innocence that protects them. All of us—counsel for prosecution and defense alike—are presumed to be innocent of wrongdoing; and until the contrary is established, agents accused of conducting a prosecution without regard for what their oath requires them to do—they too are entitled to the presumption of innocence of wrongdoing.
"I am not saying that they are innocent. I am merely saying they are entitled to the same presumption and you will require the same standards as to them. They all take oaths of office. Come to think of it, even the jury takes

started out with a statement that defendants are presumed to be innocent until the proof establishes to the jury's satisfaction that they are guilty beyond a reasonable doubt. The charge then went on to say that everyone is entitled to a presumption of innocence, and until the contrary is established,

> "agents accused of conducting a prosecution without regard to what their oath requires them to do—they too are entitled to a presumption of innocence of wrongdoing."

The jury is thus told that the prosecution's witnesses are presumed to have told the truth until the contrary is proven beyond a reasonable doubt. The charge continues with reference to the original charge that a witness is presumed to tell the truth, but the court stated that this failed to tell the jury the reason behind the presumption and "therefore its significance may be lost on you." The charge then talks about possible perjury, and that a witness is presumed to be innocent, and that the presumption remains until all the testimony is in. This portion of the charge concludes with,

> "if you come to the conclusion that the presumption of innocence still survives your deliberations, then you acquit."

■ This charge presents a confusing conglomeration of presumption of innocence of a defendant, reasonable doubt and credibility of witnesses. The standards for evaluating the guilt or innocence of a defendant are not applicable in determining the credibility of a witness. We do not have a trial within a trial on the question whether witnesses are guilty of committing perjury. The charge seems to place a burden on the defense to prove beyond a reasonable doubt that the Government's witnesses are guilty of perjury.

It is not necessary to restate here the proper instructions usually given to the jury to aid it in evaluating the credi-

---

an oath of office: The jury is admonished, the jury is instructed, for example, not to talk to anybody, not to make any expressions of opinion outside the courtroom, not to talk to their wives, not to talk to friends, not to talk to anybody.

"And there, too, you have the same motivation to consider. Does your oath bind you? It does. Do you recognize your oath? You surely do.

"But there are penalties. Do you recognize penalties for violating the oath? You surely must. And there is not the slightest suggestion that you will not do your full duty.

"All this leads up to an instruction that I may give you, and I really shouldn't have given it to you in the fashion in which I did.

"I charged you but without firmness that a witness is presumed to tell the truth. That is an instruction that I could properly give to you, but it doesn't give you the reason behind it, and, therefore, its significance may be lost on you.

"The witness, as he gets onto the witness stand and before you know anything about him, is likewise presumed to be innocent. Innocent of what? Innocent of perjury. He hasn't opened his mouth yet. Therefore, he cannot have committed perjury as he sits there and is about to give his testimony that you are yet to hear. I am talking about perjury on the witness stand before you.

"Being presumed to be innocent, he is by that, by the same argument, the same reasoning, presumed to tell the truth. Actually what that means, I guess, is he is prepared to tell the truth.

"How helpful can that be to you? Hardly very, because you are first going to hear his testimony. Whoever he is, every witness on the stand should be assessed by you at the end of his testimony, or it will likely be at the end of the trial, at the end of the whole case. Does he still have that presumption that he started with and that stays with him until you make up your mind in the jury room after you deliberate and consider and so on? Has that remained with him?

"So we all have the same presumption of innocence, but the testimony must be listened to. The presumption remains with us until all the testimony is in, everything has been heard, you weigh everything, you consider everything; and if you come to the conclusion that the presumption of innocence still survives your deliberations, then you acquit.

"If the presumption of innocence is overcome by proof of guilt beyond a reasonable doubt, that is the end of such presumption."

bility of witnesses. They are not long and verbose. If the court desired to follow the charge recommended by Judge Mathes, it should have given the complete version which indicates how the presumption of telling the truth is overcome. With those instructions in mind the jury is free to determine the credibility of the witnesses and the weight to be given their testimony. The jury is free to accept all of the testimony, part of it or none of it.

## IV

The question has also been raised on this appeal as to the propriety of the charge regarding prior inconsistent statements under oath and the effect to be given them by the jury. The charge clearly failed to state the rules enunciated by this court in United States v. Borelli, 336 F.2d 376 (2d Cir. 1964), and United States v. DeSisto, 329 F.2d 929 (2d Cir.), cert. denied, 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964). Borelli held that where a witness affirms prior testimony the jury may consider the earlier statement as being affirmative evidence and not merely as impeaching credibility. There, as here, the trial court indicated that it would follow this rule, but the instructions given failed to carry this out. The supplemental charge gave a confusing statement of the Borelli rule.[14]

DeSisto held that testimony given before a Grand Jury and at a former trial may be considered by the jury as independent evidence even though repudiated by the witness.

14. "At all events, where you do not have an exact, a direct affirmation by the witness adopting what he had earlier said or acknowledging the truth of what he had earlier said, or by the circumstantial way in which he conducts himself on the stand indicating, even though he doesn't affirmatively declare it to be so, that that was said on a prior occasion or in a different context, that would be deemed by the witness to be a truthful statement for your consideration in this trial as well. I am giving you the rule I have written down and I will see if what I wrote at six o'clock this morning reads right. I may revise it as I go along. This is the rule you are to apply:

"A jury must consider as evidence given upon this trial any prior statements in whatever form, signed or unsigned, testimony on prior trials, before a Grand Jury, anywhere, provided on being confronted with the statement while he is on the stand here before you, he adopts such statements by saying that he does, saying that they are true or so indicating when given an opportunity and having the statement shown to him or the testimony shown to him or read to him, declared to him, given an opportunity to say that it was untrue or part of it was untrue.

"If he doesn't say anything from the witness stand or, of course, he isn't given an opportunity to answer, then you cannot charge him. You cannot, if you keep a man on the witness stand and pin him down to specific answers don't let him say: 'By the way, can I interrupt you and tell you that that statement that you handed me four questions back contains something I want to correct.' If, as I say, the witness affirmatively says it is his, there is no problem; then you know he is adopting or rejecting a statement, either way; and it is for you then to consider the effect of what was or what was not said upon such earlier occasion.

"If he adopts it; even though—where you have to rely upon his unannounced acceptance, then you must consider whether he was given a fair opportunity to look it over and then to proceed to specify what parts, if any, were correct; what parts if any, were incorrect.

"If a conflict or a seeming conflict develops through the presentation of such a statement of prior evidence and so on, the witness saying on the stand: 'Yes, this is true,' and then testifying further that something else is true; and there may possibly be a conflict, an actual conflict or a claimed conflict, where the witness insists that he is saying the same thing on both occasions, what are you to do? Well, evidence adopted, acknowledged by the witness, is the same as all other evidence in the case. A witness can take the stand and tell you 40 different stories as he sits there with no prior statements in conflict. You have yet, if you are able to do it—I don't say you can—if you are able to do it, you are to select what you deem to be true and reject what you deem to be false."

See also footnote 10 supra.

During the trial the court specifically told the jury:

"What the witness says from the witness stand here is evidence for you to consider in weighing the whole situation, but what the witness, this witness or any other witness who takes the stand, may have said on another occasion, even while on a witness stand on such other occasion, is not evidence in this case for you to consider as evidence.

"If, however, there is a conflict, you may consider the statement or the testimony given on another occasion in weighing the witness as a credible person or a person who is mistaken or a person who is deliberately lying, or whatever other judgment you draw."

This was error which was repeated on several other occasions.

### V

Defendants make complaint about the *in camera* proceedings conducted by the trial judge in connection with rulings on Jencks Act material (18 U.S.C. § 3500). The assistant United States Attorney was present, but not defense counsel. A verbatim transcript of these proceedings was made and sealed along with certain material which was not furnished defense counsel. The court has read these transcripts and finds that absolutely nothing untoward occurred insofar as the fair trial of this case was concerned. However, the procedure followed was entirely unnecessary and violated Canon 17 of the Canons of Judicial Ethics. We do not consider this a ground for reversal,[15] but it is adverted to solely to assure that such procedure is not followed in the future. In the absence of some extraordinary circumstance all proceedings affecting the trial should be conducted in the presence of counsel for both sides.

### VI

Numerous other points were raised on this appeal, but neither individually nor in their totality do they constitute grounds for reversal.

The convictions of appellants are reversed and the case remanded to the district court for a new trial.

MARSHALL, Circuit Judge (concurring):

I concur in the result.

---

15. Cf. Estes v. State of Texas, 85 S.Ct. 1628 (June 7, 1965).