UNITED STATES of America,
Appellee,

v.

Joseph F. SCHIPANI, Defendant-
Appellant.

No. 382, Docket 30256.

United States Court of Appeals
Second Circuit.

Argued May 12, 1966.

Decided June 29, 1966.

Jerome C. Ditore, Asst. U. S. Atty., Eastern Dist. of New York (Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, on the brief), for appellee.

Jacob P. Lefkowitz, New York City, for defendant-appellant.

Before WATERMAN, MOORE and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

The defendant-appellant was convicted on all five counts of an indictment charging him with violations of Title 26 U.S.C. § 7201 [1] for willfully evading the payment of personal income taxes due from him for the five calendar years 1956 through 1960. He was fined $2500 and sentenced to three years imprisonment on each count, to be served concurrently, but with the proviso that he should not be released from confinement until the fines had been fully paid.

The case was tried on the "net worth" theory, in support of which the Government offered evidence to prove that Schipani had a certain net worth at the beginning of 1956 and an increase in net worth at the end of that year and at the end of each succeeding calendar year during the indictment period. The proof was entirely circumstantial because Schipani kept no records, did not file any income tax return at all for any of the years covered by the indictment, and did not furnish the Government with any leads with regard to any cash reserve, income or expenses.

An essential element of a case of this kind is proof of the opening net worth of the accused as it was at the beginning of the indictment period. Holland v. United States, 348 U.S. 121, 132, 75 S.Ct. 127, 99 L.Ed. 150 (1954). The Government offered as a basis or starting point for this phase of its case a statement made by the defendant in 1943 concerning his cash resources at that time, thirteen years before the indictment. In that year Schipani had been convicted of an offense and commenced serving one and a half years of a two year term of imprisonment. On February 10, 1943, in the course of a routine interrogation by the prison authorities relating to Schipani's personal history and circumstances at the time he was admitted to the prison, he stated that the only cash he then had was $1350 which he had left with his wife. The trial court found this to be true; and it also found, from evidence of Schipani's financial dealings and affairs from that time to and including December 31, 1955, that Schipani had assets on January 1, 1956 of $18,908.89 and liabilities of $1300 from which it computed a net worth of $17,608.89 at the beginning of the indictment period. The trial court further

---

1. Title 26 U.S.C. § 7201, in pertinent part, reads as follows:

"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony * * *"

found that, at the end of the calendar year 1956, the defendant had an increase in his net worth of $7,307.35, and in each of the four subsequent indictment years there was likewise an increase in the defendant's net worth.[2]

The findings state, and the evidence clearly showed, that the Government made an exhaustive investigation into virtually every possible source of information concerning Schipani's economic circumstances from January, 1943 through December, 1960. The leads obtained from checking over one hundred central and branch bank offices in areas in which Schipani lived and which he frequented, finance companies and credit bureaus, various insurance, retail and brokerage firms, records of Kings County and the New York Surrogate Courts and the Estate and Gift Tax Office of the United States were followed through by investigators. The Government also sought out and questioned friends and relatives of the appellant for further leads which were then pursued. The information thus obtained furnished the proof presented in the Government's case.

The cash on hand at the end of one year and the beginning of the next, however, was only one of the items entering into the total of the assets at that time. The unadjusted net worth was simply the result of subtracting the total liabilities at the time from the total assets. The court below found that the initial cash of $1350 in 1943 had been consumed; and it was assumed, on the basis of the presumption of innocence, that, because Schipani filed no income tax returns for the years 1943 through 1955, he never (except for a very small amount in 1945) in any of those years had a yearly gross income in excess of the amount which would have required him to file a return. His expenditures, however, were greatly in excess of such amounts of income.[3] It was, therefore, found that the cash on hand at the beginning of the indictment period, January 1, 1956, was zero.[4]

2.

| | Net Worth | Net Worth Previous Year End | Increase in Net Worth |
| --- | --- | --- | --- |
| 12/31/55 | $17,608.89 | | |
| 12/31/56 | 24,916.24 | $17,608.89 | $7,307.35 |
| 12/31/57 | 28,933.05 | 24,916.24 | 4,016.81 |
| 12/31/58 | 33,979.11 | 28,933.05 | 5,046.06 |
| 12/31/59 | 38,353.30 | 33,979.11 | 4,374.19 |
| 12/31/60 | 39,245.26 | 38,353.30 | 891.96 |

3. Expenditures were made by defendant during the years 1943 through 1955 of the following amounts segregated by calendar years.

| | | | |
| --- | --- | --- | --- |
| 1943 | $1,203.47 | 1949 | $3,691.73 |
| 1944 | 1,145.60 | 1950 | 3,528.62 |
| 1945 | 1,145.34 | 1951 | 3,804.05 |
| 1946 | 1,164.64 | 1952 | 4,912.86 |
| 1947 | 8,694.02 | 1953 | 3,776.71 |
| 1948 | 3,138.80 | 1954 | 4,646.71 |
| | | 1955 | 7,079.72 |

4. Funds available to defendant on December 31 of each of the years in the period from 1/1/43 to 12/31/55 segregated by calendar years were as follows:

| | |
| --- | --- |
| 12/31/1943 | $1,146.52 |
| 12/31/1944 | 955.91 |
| 12/31/1945 | 442.76 |
| 12/31/1946/1955 | —0— |

The other items of assets, which on that date were found to total $18,908.89,[5] consisted of two savings accounts in the Flatbush Savings Bank, an investment in United States Savings Bonds, real estate, and a 1955 Ford automobile. From this amount was subtracted a loan and a mortgage note totaling $1300. In the subsequent indictment years, 1957 through 1960, the total asset figures reflect purchases of stock, furniture, and a boat as well as increases in the existing savings bank accounts and the opening of two additional small savings bank accounts. The liability total, which was deducted from the total value of the assets in each of the years, also reflected additional increases in liabilities, most of which were associated with major asset purchases during the same years.[6]

The Government in its proof and the trial court in its findings, in arriving at the opening net worth and in calculating the net increase in net worth for each of the indictment years, also made certain adjustments. The findings show that additions to the unadjusted figure included non-capital expenditures [7] and the non-deductible losses on the sale of personal property. The latter were included in arriving at the 1956 net worth and the 1960 net worth. The loss for each of these years was treated as the equivalent of an expenditure, which explains the differences between "total expenditures" and "additions to net worth" for each of those years, whereas those items in the other three years (1957–1959, inclusive) are exactly the same. The deductions made from the unadjusted net worth, reflect the dividends-received exclusion in each of the indictment years, the proceeds of a paid up life insurance policy in 1959, and refunds

5. Defendant's total assets at the beginning and end of each indictment year were approximately as follows:

| | | | |
|---|---|---|---|
| 1/1/56 | | | |
| (12/31/55) | $18,908.89 | 12/31/56 | $37,806.52 |
| 1/1/57 | 37,806.52 | 12/31/57 | 38,897.48 |
| 1/1/58 | 38,897.48 | 12/31/58 | 44,447.77 |
| 1/1/59 | 44,447.77 | 12/31/59 | 45,589.33 |
| 1/1/60 | 45,589.33 | 12/31/60 | 45,273.58 |

6. Defendant's total liabilities at the beginning and end of each indictment year were approximately as follows:

| | | | |
|---|---|---|---|
| 1/1/56 | | | |
| (12/31/55) | $ 1,300.00 | 12/31/56 | $12,890.28 |
| 1/1/57 | 12,890.28 | 12/31/57 | 9,964.43 |
| 1/1/58 | 9,964.43 | 12/31/58 | 10,468.66 |
| 1/1/59 | 10,468.66 | 12/31/59 | 7,236.03 |
| 1/1/60 | 7,236.03 | 12/31/60 | 6,028.32 |

7. The total expenditures for each of the indictment years were as follows:

| | |
|---|---|
| 1956 | $ 7,339.09 |
| 1957 | 9,135.45 |
| 1958 | 10,316.66 |
| 1959 | 17,432.93 |
| 1960 | 10,289.32 |

from the receiver of taxes and a realty company.[8]

The defense offered no evidence and the principal issue at the trial was the sufficiency of the Government's case. The trial court concluded that the Government had proven beyond a reasonable doubt that Schipani had a gross income in each of the indictment years considerably in excess of the amount which required him to file an income tax return, that income taxes were due for each of those years and that the defendant willfully sought to evade the payment of the taxes by filing no return for any of the years in question. We affirm.

The appellant has presented a number of points on appeal, most of which attack the proof of "opening net worth" as insufficient to establish a prima facie case and which also attack, as inadequate for proof beyond a reasonable doubt, the evidence offered to show the increases in net worth, particularly as they were allocated to each separate tax year.

 The only issue raised on the admissibility of evidence concerns the denial of the defendant's pre-trial motion and the overruling at the trial of his objection to the prison record of what Schipani said to the prison official in February of 1943 that he had only $1350 in cash which he had left with his wife. The appellant argues here, as he did below, that this violated his Fourth Amendment right because the report was the product of an unreasonable search and seizure and his Fifth Amendment right because it was an involuntary and incriminating statement. We agree with the trial judge, however, that as far as

the Fourth Amendment is concerned, this routine taking down of relevant information as part of the regular prison procedure in setting up the personal record of an inmate, unrelated to any pending investigation of a criminal offense, is not an unreasonable search or seizure of appellant's "person, house, papers and effects." Schipani made a voluntary response to a question asked him under circumstances which bore no conceivable relationship to the procuring of an inculpatory statement by police or prosecuting officials in connection with any criminal activity, particularly to the present case which was not thought of or initiated until many years later. It, therefore, furnishes no basis for a claim of lack of due process under the Fifth Amendment.

With regard to the Government's proof that there was virtually no cash in the defendant's hands as part of his assets as that bore upon the opening net worth of Schipani on January 1, 1956, we are of the opinion that under the circumstances of this case, the Government would have shown a more consistent approach if, in the pre-indictment period, 1943–1955, inclusive, it had assumed, as it did for the years covered by the indictment, 1956–1960, inclusive, that proof of expenditures in a particular calendar year showed a commensurate income for that year. Where, as here, there was so complete and thorough an exhaustion of non-taxable sources for cash, it seems unnecessary to invoke Schipani's presumption of innocence to sanctify the proposition that he earned, during the pre-indictment years, no more than the maximum gross income ($499.99 or

8.

| | Increase in Net Worth before adjustment (Exh. 281) | Adjustments to Net Worth (Exh. 285) | | Gross Income |
|---|---|---|---|---|
| | | Additions | Deductions | |
| 1956 | $7,307.35 | $ 8,553.09 | $ 61.52 | $15,798.92 |
| 1957 | 4,016.81 | 9,135.45 | 96.79 | 13,055.47 |
| 1958 | 5,046.06 | 10,316.66 | 37.08 | 15,325.64 |
| 1959 | 4,374.19 | 17,432.93 | 1,084.19 | 20,722.93 |
| 1960 | 891.96 | 12,080.23 | 59.20 | 12,912.99 |

$599.99) which a person may receive without being required to file a tax return. His expenditures, as shown by the Government, for the 1943–1955 period did not include living expenses for himself and family, except for rent. It is more than likely that such living expenses consumed the $1350 in the year and a half of his imprisonment. At any rate, it must have been expended by the end of the 13 year period. Even if it were not, and it remained as a cash resource on January 1, 1956, there would still have been a substantial increase in net worth in 1956. The total of Schipani's expenditures in the pre-indictment years must have reflected money which he had first received in income. The court in effect so found, and also determined that Schipani had no surplus of earnings over expenditures during that period.

■■ The appellant does not otherwise attack the findings because of a lack of or infirmity in, the evidential bases on which they rest, but rather contests what he describes as the court's "factual theory of the proofs" and the sufficiency of the evidence to establish his guilt on each of the counts beyond a reasonable doubt. Conviction in a net worth case necessarily rests upon inferences reasonably drawn from circumstantial evidence. It is within the province of the trier to draw those inferences and, so long as they are reasonably and logically supported by the evidence they must stand. The trial judge made detailed findings, with annotations of references to pertinent evidence in the record, covering opening net worth and the annual increase in net worth for each separate calendar and tax year for the five years covered by the indictment. We are satisfied that there was ample evidence to support the findings and sufficient proof to establish Schipani's guilt on all of the counts beyond a reasonable doubt.

■■ Appellant argues, in substance, that the presumption of innocence requires, in cases of this kind, based as they are largely on circumstantial evidence, that the proof must be such as to exclude every reasonable hypothesis of innocence. He asserts that the evidence in the present case would have warranted an inference by the court that Schipani had a cash hoard or reserve from which his expenditures and increases in net worth derived, and that, therefore, the Government had the burden of proving that such a hoard did not exist, which it failed to do. In the first place the Supreme Court has characterized this rule for "evaluating the proof" as confusing and incorrect. Holland v. United States, supra, at 139–140, 75 S.Ct. 127. It declared that the rule to be applied is proof beyond a reasonable doubt, whether the evidence is circumstantial or testimonial. In the second place the totality of circumstances shown by the evidence in the case, including financial assistance given to his family, his borrowings, his delinquency in paying life insurance premiums, instalments on purchase of an automobile, payments on mortgage debt and other bills as well as other incidents found by the trial court, support the conclusion that no such cash hoard ever existed. The absence of such a reserve fund was established as part of the Government's prima facie case. At that point the appellant remained quiet at his own peril. Holland v. United States, supra, at 138–139, 75 S.Ct. 127; United States v. Mackey, 345 F.2d 499, 506 (7th Cir. 1965), cert. denied, 382 U.S. 824, 86 S.Ct. 54, 15 L.Ed.2d 69; Fowler v. United States, 352 F.2d 100, 107 (8th Cir., 1965), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

■ The appellant has not on this appeal suggested any non-taxable sources other than a cash hoard, and it appears that the Government negatived all other reasonably possible sources from which Schipani could have acquired non-taxable funds. Under the circumstances, proof of "a likely source" of net worth increases is not necessary. United States v. Massei, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517 (1958). Nevertheless, evidence was offered, and the trial court

found, that Schipani had likely sources of income from an interest in a restaurant and also as a negotiator in labor-management relations. The Government made out a prima facie proof of this fact in the case; it was not contradicted.

■ The appellant disputes that the Government proved the element of willfulness, that is to say the specific intention to evade the payment of taxes. The evidence of Schipani's apparent attempts to conceal income, however, through the use of assumed names and other devices, and his failure to file income tax returns, considered in connection with the proof of unreported taxable income, are all that are necessary to show the requisite intent. Holland v. United States, supra, at 139, 75 S.Ct. 127; Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943).

■ This leads us to comment briefly on appellant's claim that his constitutional rights were violated because he was convicted of the felony violation of willful tax evasion under Title 26 U.S.C. § 7201 "on the charge of failure to file income tax returns" which, if willful, is a misdemeanor under Title 26 U.S.C. § 7203. He asserts that § 7201 is void for vagueness. Actually he was charged with violations of § 7201 as a willful evader and not simply as one who willfully failed to file tax returns under § 7203. The latter may under proper circumstances be a lesser included offense of the former. "Willfully" under § 7203 calls only for proof that the taxpayer failed to file his tax return intentionally and knowingly and not through accident or mistake or other innocent cause. "Willfully" under § 7201 calls for proof that the taxpayer failed to file a tax return with the specific intention of evading or defeating payment of the tax. The context of the respective statutes makes this perfectly clear, and they have been so interpreted and construed by the Supreme Court. Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); Spies v.

United States, supra. There is no merit to the claim that § 7201 is vague.

Finally, the appellant argues that he was prejudiced by the procedure employed by the trial court in screening certain materials under the Jencks Act, 18 U.S.C. § 3500. The procedure used by the trial judge was the same which this court strongly condemned in United States v. Persico, 349 F.2d 6, 13 (2d Cir., 1965). The *in camera* proceedings were conducted with the assistant United States Attorney present and participating, but in the absence of defense counsel. In *Persico,* we stated:

> "* * * the procedure followed was entirely unnecessary and violated Canon 17 of the Canons of Judicial Ethics. We do not consider this a ground for reversal, but it is adverted to solely to assure that such procedure is not followed in the future" (footnote omitted).

The reason that the use of such a procedure was not considered a ground for reversal is that, a study of the transcript of the *in camera* proceeding by this court revealed "that absolutely nothing untoward occurred insofar as the fair trial of this case was concerned" (349 F.2d at 13).

■ In the present case the verbatim minutes of the similar irregular proceedings were examined and we, likewise, find that nothing took place that prejudiced the defendant in any way. We, therefore, do not reverse. Neither the lack of prejudice to the defendant in this particular case nor the lengthy explanation for the procedure in the opinion of the trial judge, however, justifies its continued use. We are aware that the *in camera* proceedings in this case took place prior to the date of the *Persico* decision and the trial court was not on notice of the error, but the use of this procedure after the date of *Persico* will call for corrective action.

There was no other question raised on this appeal as to the handling or disclosure to the defense of Jencks Act material, but the materials withheld from

the defendant at the trial were not sealed and sent up to this court as the statute requires. It is essential that the district courts comply with the statutory requirement in this regard.

We have considered the remaining questions raised by the appellant but conclude that they neither disclose a ground for error nor warrant discussion.

The judgment of the district court is affirmed.