**UNITED STATES of America,
Appellee,**

**v.**

**Joseph F. SCHIPANI, Appellant.**

**No. 692, Docket 33157.**

United States Court of Appeals
Second Circuit.

Argued June 25, 1969.

Decided Aug. 11, 1969.

Jacob F. Lefkowitz, New York City (Abraham Glasser, New York City, of counsel), for appellant.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Joseph Howard, Cono R. Namorato, Janet R. Spragens, Attys., Dept. of Justice, Washington, D. C. (Vincent T. McCarthy, U. S. Atty., for the Eastern District of New York, Jerome C. Ditore, Asst. U. S. Atty., of counsel), for appellee.

Before HAYS and FEINBERG, Circuit Judges, and JAMESON, District Judge.*

JAMESON, District Judge:

This is an appeal from a judgment of conviction entered December 6, 1968, after trial without a jury, on five counts of willful income tax evasion through failure to file returns for the years 1956–

* Senior District Judge of the District of Montana, sitting by designation.

1960 inclusive, in violation of 26 U.S.C. § 7201.[1]

Appellant was first found guilty of the same offenses, after a non-jury trial,[2] on October 15, 1965, and was sentenced on December 3, 1965. This conviction was affirmed by this court on June 29, 1966. United States v. Schipani, 2 Cir. 1966, 362 F.2d 825. Certiorari was denied on November 7, 1966, 385 U.S. 934, 87 S. Ct. 293, 17 L.Ed.2d 214.

On November 30, 1966, the Solicitor General filed a supplemental memorandum in the Supreme Court advising the Court that material evidence against appellant was based in part on electronic surveillance and suggesting that by reason of this taint the "Court vacate its order denying certiorari, grant certiorari, vacate the judgment of the court of appeals, and remand the cause to the district court for a new trial, should the government seek to prosecute the petitioner anew."[3] On December 12, 1966, acting "(u)pon the suggestion of the Solicitor General and upon an independent examination of the case," the Supreme Court remanded to the district court "for a new trial should the Government seek to prosecute petitioner anew." 385 U.S. 372, 87 S.Ct. 533, 17 L.Ed.2d 428.

Following remand, appellant filed a motion to suppress all evidence obtained as a result of any electronic surveillance. A full evidentiary hearing on the motion commenced May 6, 1968, and continued for five days. The Government made full disclosure of all available information relating to electronic surveillance of any conversations in which appellant had participated.[4] In a thorough and well-reasoned opinion, Judge Weinstein suppressed all evidence introduced at the first trial relating to appellant's "likely sources of income"[5] and otherwise denied the motion. United States v. Schipani, E.D.N.Y.1968, 289 F.Supp. 43.

At the second trial, the entire record of the first trial was received in evidence as an exhibit, pursuant to a stipulation entered into by the Government, appellant, and appellant's trial counsel. Since "likely source" evidence had been excluded, the Government's case rested solely

---

1. 26 U.S.C. § 7201 provides in pertinent part:
   "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony * * *."

2. Prior to the first trial the parties had waived a jury. Before the second trial the Government moved to withdraw its consent to trial without jury. The motion was resisted and denied, the court holding that the Government's waiver covered "the above entitled case" rather than a particular trial. United States v. Schipani, E.D.N.Y.1968, 44 F.R.D. 461.

3. The memorandum set forth that it had come to the attention of the Solicitor General that appellant had been a participant in a number of conversations which had been electronically monitored as a result of trespass. The Solicitor General was unable on the basis of information then available to "say * * * that none of the evidence used by the government at petitioner's trial was obtained, either directly or indirectly, from an improper source."

4. With respect to the evidence presented at the hearing, the court said in part:
   "The Government has freely revealed all data available to it. It has presented all the surveillance logs of conversations in which the defendant participated or was mentioned, the files of the Federal Bureau of Investigation, the Alcohol and Tobacco Tax Division of the Treasury Department, the Intelligence Division of the Internal Revenue Service, and the Department of Justice, and the testimony of the many agents and attorneys in the 1961–1963 investigations of the defendant and the 1966 review of their work by the Department of Justice. In addition, the Federal Bureau of Investigation 'case agent' assigned to the Schipani investigation reviewed all the Federal Bureau of Investigation reports relating to the defendant and underlined all information obtained as a result of electronic surveillance" (289 F.Supp. at p. 45).

5. Each time the case was tried on the "net worth" theory. At the first trial the Government offered evidence of "likely sources" of income, as well as negating all nontaxable sources of income.

on a negation of all non-taxable sources of income, a theory approved in United States v. Massei, 1958, 355 U.S. 595, 78 S.Ct. 495, 2 L.Ed.2d 517.

Following detailed findings, the court concluded: "During each of the years charged in the indictment the defendant had substantial taxable income greatly in excess of six hundred dollars. During each of these years he should have paid a substantial income tax. He failed to file income tax returns and concealed his income wilfully in order to defraud the government of income taxes due by him to the government. The government has proved beyond a reasonable doubt all the elements of the crime charged for each of the years charged in the indictment. The defendant is guilty as charged on all counts." United States v. Schipani, E.D.N.Y.1968, 293 F.Supp. 156, 163, 164.

## I.

Appellant first questions the propriety of the proceedings upon remand and contends that the Government could not constitutionally retry the case on the basis of "first-trial proofs." He argues that the ruling of the district court that there was sufficient taint-free evidence to permit a retrial on the same evidence constituted a "collateral finding" that "the Supreme Court of the United States was 'in error' in having adjudicated to the contrary in deciding the same electronic issues in December, 1966, on the merits and 'upon an independent examination of the case.' "

We do not so read the Court's opinion. It is significant that the Supreme Court, after its "independent examination of the case," did not order a dismissal. Appellant had petitioned for a "remand with direction to vacate the judgment of conviction and to dismiss the indictment." The Court did not grant the petition but instead provided expressly for a "new trial should the Government seek to prosecute * * * anew." [6] Had the Court intended the construction placed upon its order by appellant, it would have granted his motion.

Clearly it was necessary to determine in some manner what evidence was tainted. This the district court did in an extended suppression hearing, with complete disclosure to appellant by the Government of all available information in the Government's files and with an opportunity to cross-examine the key agents and investigators who had any knowledge of the electronic surveillance.[7]

The *per curiam* opinion of the Supreme Court did not hold or even suggest that all evidence at the first trial was tainted by electronic surveillance. The Court had been advised by the Solicitor General that some of the leads and evidence were tainted. Neither the Solicitor General nor the Supreme Court had the benefit of the careful analysis and testimony with respect to the sources of all evidence which were available to the district court as a result of the suppression hearing.[8]

The evidence at the suppression hearing disclosed that the F.B.I. had been compiling information on appellant since 1958. In a report dated October 10, 1960, the defendant was described by one source as "one of the most influential and most powerful figures in New York

---

6. A similar procedure of remand for an exclusionary hearing was followed in United States v. Wade, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149; Gilbert v. California, 1967, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

7. The evidence adduced at the suppression hearing included "a painstaking analysis of all the evidence introduced" in the first trial, prepared by the Special Agent of Intelligence in charge of the Schipani investigation, with a member of the staff of the United States Attorney. "The prod-

ucts of their labors was a comprehensive chart which denotes a specific source or sources for each witness and piece of evidence (including 292 exhibits) introduced at the trial" (289 F.Supp. at p. 49).

8. The same is true of the memorandum prepared by James Dewey O'Brien, then the Assistant Chief of the Criminal Section of the Tax Division, upon which appellant heavily relies in support of his contention that all first trial proofs were tainted.

underworld" and "considered to be associated with several of New York's top hoodlums" (289 F.Supp. at p. 46). The first information obtained by electronic surveillance was in 1961 through an investigation of Michael Clemente and covered the "Prisco Travel Bureau, a 'front' for Clemente's criminal activities and a meeting place for many of New York's top mobsters." Although appellant was not the subject of that electronic surveillance, nine conversations in which he participated and 27 others in which he was discussed or his name was mentioned were electronically monitored (p. 47).

The district court properly examined all of the evidence in the first trial to determine whether all or only a part was tainted by the electronic surveillance, and whether any untainted portion was independent of and distinguishable from that which was tainted.[9] After a full hearing the court, in a careful opinion, first recognized that "evidence is admitted if it is obtained from an untainted 'independent source' but excluded if it is obtained as the result of illegality"; that evidence discovered "as a result of both legal and illegal leads" is inadmissible, even though "the legal lead would itself probably have sufficed to uncover the evidence" (289 F.Supp. at p. 54); and that the Government is required to "prove beyond a reasonable doubt that the evidence it introduces was legally obtained" (at p. 59).

Applying the foregoing rules, the court found, *inter alia*, that the only tainted evidence was that relating to a likely source of income; that the "(o)ther evidence of defendant's net worth was proved beyond a reasonable doubt to be untainted" (at p. 61); that the investigation was not intensified by reason of any tainted information,[10] and that it was "highly likely that the government would have launched a saturation investigation * * * even if no information had been received from electronic surveillance of the Prisco Travel Bureau"[11] (at p. 64).

We approve the legal principles applied. The findings were not clearly erroneous. They were supported by substantial evidence.

## II.

Appellant's next contention that the evidence was insufficient to sustain a conviction was considered by this court on the appeal from the first conviction.[12]

9. The proper test is: "(W)hether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 1963, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441; Hoffa v. United States, 1966, 385 U.S. 293, 309, 87 S.Ct. 408, 17 L.Ed.2d 374; United States v. Wade, 1967, 388 U.S. 218, 241, 87 S.Ct. 1926, 18 L.Ed.2d 1149.

10. "The government has established by a preponderance of evidence and possibly by clear and convincing proof—though not beyond a reasonable doubt—that the intensity of its investigation by Intelligence and the Alcohol Tax Division was not affected by tainted information." 289 F. Supp. at p. 64.
   The court had previously concluded that proof showing that the intensity of the investigation was not the result of tainted information was satisfied by a preponderance of the evidence.

11. In reaching this conclusion the court relied in part upon the untainted F.B.I. report of October 10, 1960, *supra*, and "additional leads * * * through acceptable investigative techniques. Defendant had never filed an income tax return although he obviously enjoyed a high standard of living. Immediately after the investigation began, the defendant appeared so vulnerable and the likelihood that an income tax investigation would prove fruitful was so great, that government agents would naturally focus on him" (289 F.Supp. at p. 64).

12. In view of the factual background contained in the prior opinion of this court (362 F.2d 825) and the detailed findings of Judge Weinstein in his order following the suppression hearing (289 F.Supp. 43) and in his opinion following trial (293 F.Supp. 156), we do not deem it necessary to set forth the evidence in detail in this opinion.

As noted *supra,* at each trial the Government relied on the "net worth" theory.[13] The evidence of "likely source" income accepted at the first trial was excluded at the second trial. The evidence negating non-taxable income, however, was identical at the two trials.

In affirming the first conviction, this court found that the "totality of circumstances shown by the evidence" supported the conclusion that no "cash hoard" ever existed; that the "absence of such a reserve fund was established as part of the Government's prima facie case" and appellant "remained quiet at his own peril."[14] The opinion pointed out that the appellant had not suggested any "non-taxable sources other than a cash hoard" and that "the Government negatived all other reasonably possible sources from which Schipani could have acquired non-taxable funds." It was held that, "Under the circumstances, proof of 'a likely source' of net worth increases is not necessary," relying on United States v. Massei, *supra,* and other cases cited. (362 F.2d at 830.)[15]

■ We adhere to our conclusion that it was not necessary to rely upon a "likely source" of net worth to sustain a conviction, and hold that after the elimination of all evidence of "a likely

source," the evidence was still sufficient to prove guilt beyond a reasonable doubt.

With respect to appellant's contention that the Government failed to establish the element of "willfulness," Judge Weinstein sets forth in detail the factors showing "a pattern consistent only with that of a guilty mind" (293 F.Supp. at 161). We agree with his conclusion. The factors enumerated in his opinion are essentially the same as those considered by this court in its prior decision (362 F.2d at 831).

### III.

■ This court also considered on the prior appeal appellant's contention that the trial court erred in admitting into evidence the prison record of a statement given by appellant to a prison official in February, 1943, that he had only $1350 in cash which he had left with his wife. The statement was offered to show appellant's net worth in 1943 as a starting point in proving his net worth at the beginning of the indictment period. The statement was given in the course of a routine interrogation by prison authorities relating to Schipani's personal history. It was unrelated to any pending investigation of a criminal offense, and particularly bore no relationship to the present case, which was not

---

13. In a net worth case, the Government "attempts to establish an 'opening net worth' or total net value of the taxpayer's assets at the beginning of a given year. It then proves increases in the taxpayer's net worth for each succeeding year during the period under examination and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each of the years involved. The taxpayer's nondeductible expenditures, including living expenses, are added to these increases, and if the resulting figure for any year is substantially greater than the taxable income reported by the taxpayer for that year, the Government claims the excess represents unreported taxable income. In addition, it asks the jury to infer willfulness from this understatement, when taken in connection with direct evidence of 'conduct, the likely effect of which would be to mislead or to conceal.' Spies v. United States, 317 U.S.

492, 499 [63 S.Ct. 364, 368, 87 L.Ed. 418]." Holland v. United States, 1954, 348 U.S. 121, 125, 75 S.Ct. 127, 130, 99 L.Ed. 150, rehearing denied 348 U.S. 932, 75 S.Ct. 334, 99 L.Ed. 731.

14. Appellant did not offer any evidence at either trial, but relied on insufficiency of the Government's proof.

15. Appellant recognizes that this issue was determined adversely to his contention in our opinion affirming conviction on the first appeal, but argues that the "inartistic reference to a 'reasonably' proved negation of 'all possible" non-taxable source under the *Massei* case" was an unwarranted extension of the *Massei* rule and does not find support in other cases construing *Massei.* We find nothing in the cases cited by appellant contra to our construction of *Massei* as applied to the facts of this case.

initiated until many years later. We adhere to our prior holding that there is no basis for appellant's claims that this statement constituted an involuntary or incriminatory statement in violation of appellant's Fifth Amendment rights and was an unlawful search and seizure in violation of the Fourth Amendment.[16]

### IV

 Finally, appellant complains of the conduct of the trial judge, first in "refashioning * * * an indispensable element in the formulation and proof of the indictment charges." In the first trial, the Government relied upon the "presumption of innocence" arising from the failure to file returns in pre-indictment years. This court held this approach improper, and the trial judge properly called this conclusion to the Government's attention. In following the suggestion of this court (362 F.2d at 829–830) the district court did not abuse its discretion.

■ Nor is there merit in appellant's contention that he was denied a fair trial by the "infection of the record with reference to his alleged notorious criminal background." As noted *supra*, appellant resisted the Government's motion to withdraw its consent to a trial without jury. The motion was denied by reason of the trial court's conclusion that there was "a substantial danger that the defendant will be severely prejudiced if he is tried before a jury" (44 F.R.D. at 463), based in large part upon the testimony in the suppression hearing with respect to defendant's criminal activities. In an order entered October 14, 1968, Judge Weinstein granted appellant's motion to strike all references to appellant's alleged background of illicit activities, saying in part: "The Court will not base its decision on the defendant's criminal background, if any." We find no evidence that the trial court gave any weight to the evidence of appellant's criminal activities in arriving at the

guilty verdict. The proof was sufficient without considering this evidence.

■ Appellant also complains of the court's reference to appellant's "demeanor and general appearance," in view of the fact that appellant did not take the stand. We agree with the district court that, "The trier's observation of the non-witness defendant's demeanor and general appearance may be—and almost invariably is—considered by him in evaluating evidence introduced at the trial (citing cases)." Moreover, Judge Weinstein specifically stated that " * * * the conclusion that defendant was guilty beyond a reasonable doubt was reached solely on the record."

Affirmed.

---

16. The cases upon which appellant relies are factually distinguishable in that the statements under consideration in those

cases were given in connection with the investigation of the accused.