EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* PEDRO RIVERA ADORNO, acusado y apelante.

Número: CR-69-121    Resuelto: 13 de enero de 1971

*Francisco Coll Moya* y *Yamil Galib,* abogados del apelante; *Gilberto Gierbolini, Procurador General,* y *Ruth Tentori de Lebrón Velázquez, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El apelante fue acusado de infracciones a la Sec. 145(a) y (b) de la Ley Núm. 91 de 29 de junio de 1954, según enmendada—Ley de Contribución sobre Ingresos (13 L.P.R.A. sec. 3145). Fue declarado por el jurado no culpable del delito de infracción a la Sec. 145(b) pero el juez de instancia lo declaró culpable de los delitos menos graves consistentes en no radicar las planillas de la contribución sobre ingresos correspondientes a los años 1961 y 1962 como lo requiere la Sec. 51 de la Ley Núm. 91 (13 L.P.R.A. sec. 3051(a)), por lo que se infringieron las disposiciones de la Sec. 145(a) de la referida ley. Fue sentenciado a pagar multas de $5,000 y $10,000 más las costas.

Apunta que las sentencias son contrarias a derecho y no están sostenidas por la prueba y que el tribunal de instancia incidió al apreciar la prueba.

No tiene razón, por los fundamentos relacionados a continuación:

La prueba revela que el apelante informó a un agente de rentas internas que era soltero con dos dependientes, no tenía ingresos de sueldos, beneficios de sociedades, división de corporación, no recibió herencia o donación, ni seguros ni pagos de reclamación, ni tenía negocio ni ocupación durante los años 1961 y 1962. Hasta 1960 vivía con un tío. Informó a dicho agente que no radicó planilla de contribución sobre ingresos durante esos dos años por no tener ingresos tributables. Los únicos bienes del apelante que fueron localizados fueron dos cuentas de ahorros. Una fue abierta en 1961 en el Banco de Ponce, el movimiento de la cual fue el siguiente:

| Fecha | Depósitos | Retiros | Intereses |
|---|---|---|---|
| 21-4-61 | 10,350.00 | | |
| 3-5-61 | 6,250.00* | | |
| 31-5-61 | 2,450.00* | | |
| 23-6-61 | | | |
| 7-7-61 | 7,150.00* | | 89.13 |
| 15-8-61 | | 25,000.00 | |
| 31-8-61 | 12,500.00* | | |
| 5-10-61 | 512.00* | | |
| 2-11-61 | 10,000.00 | | |
| 16-11-61 | 1,803.00* | | |
| 17-11-61 | | 10,000.00 | |
| 28-12-61 | | 3,080.58 | |
| 21-12-61 | 2,400.00* | | |
| 26-12-61 | | | 240.18 |
| Totales 1961 | 53,415.00 | 38,080.58 | 329.31 |

—1962—

| Fecha | Depósitos | Retiros | Intereses |
|---|---|---|---|
| 15-3-62 | 40,000.00* | | |
| 4-4-62 | | 5,022.50 | |

| Fecha | Depósitos | Retiros | Intereses |
|---|---|---|---|
| 13-4-62 | | 1,501.71 | |
| 17-4-62 | | 10,000.00 | |
| 18-4-62 | | 250.00 | |
| 19-4-62 | 22.50 | 17,898.29 | |
| 19-4-62 | 250.00 | 600.00 | |
| 4-62 | | | 135.17 |
| 9-5-62 | 166.50 | | |
| 31-5-62 | 166.50 | | |
| 5-7-62 | 166.50 | | |
| 12-6-62 | | 20,000.00 | |
| 28-6-62 | | | 9.76 |
| 6-7-62 | 650.00 | | |
| 8-8-62 | 166.50 | | |
| 16-8-62 | 20,000.00 | | |
| 8-9-62 | | | 16.90 |
| 12-9-62 | 166.50 | | |
| 28-9-62 | 25,000.00 | | |
| 5-11-62 | | 47,000.00 | |
| 28-12-62 | | | 4.09 |
| Totales | $86,871.50 | $102,272.50 | 165.92 [1] |

La otra la abrió el apelante en el Chase Manhattan Bank en 11 de noviembre de 1962 con el depósito de la suma de $19,550, producto del premio de un billete de la lotería de Puerto Rico. Dicho depósito fue retirado en 1ro. de diciembre de ese mismo año.

El apelante le informó al agente de rentas internas gastos personales de $4,558 en cada uno de los años 1961 y 1962 consistentes de $750 en alimentos, $200 en ropa, $120 en electricidad, $60 de agua, $120 de lavado, $150 de recrea-

[1] Las cifras marcadas con asteriscos son depósitos hechos mediante presentación de cheques expedidos por el Negociado de la Lotería de Puerto Rico a nombre de Pedro Rivera Adorno en concepto de pago de billetes de lotería premiados.

ción, $20 de revistas y $1,200 de jugadas de lotería. Nótese que durante el 1961, el primer retiro que hizo el apelante de la referida cuenta de ahorros fue en 15 de agosto de 1961 cuando ya para esa fecha había incurrido en gastos personales muy en exceso de $800 sin que la prueba demostrase la fuente u origen de los fondos disponibles para tales gastos.

Arguye el apelante que (1) se hizo caso omiso de la alegación del apelante de que los ingresos habidos por él en los años en cuestión provenían de premios obtenidos en los sorteos de la lotería de Puerto Rico; (2) se consideró, incorrectamente todo depósito como ingreso; (3) se pretendió no tan sólo que todos los depósitos bancarios constituían ingresos si que también que todas las inversiones y gastos de vida y personales del apelante fueron hechos con fondos adicionales, distintos y separados de sus depósitos en cuestión.

Concluimos que el tribunal de instancia tuvo prueba suficiente para justificar su conclusión de que el apelante *voluntariamente* dejó de rendir o declarar ingresos durante los años 1961 y 1962 por razón de haber tenido durante cada uno de esos años un ingreso bruto de más de $800, según lo requieren las Secs. 145(a) y 51 de la referida ley Núm. 91.

Es necesario determinar primeramente el significado preciso del término *voluntariamente* cuando se usa en la definición del delito menos grave de no rendir la planilla de contribución sobre ingresos a su debido tiempo. En *Pueblo v. Calzada*, 93 D.P.R. 803 (1966), definimos el alcance de dicho término en relación con el delito de no pagar la contribución.

La Sec. 145 de la citada ley Núm. 91 dispone, entre otras cosas, que cualquier persona obligada por dicha ley a rendir una planilla o declaración, que *voluntariamente dejare de rendirla* dentro del término fijado por la ley, será culpable de un delito menos grave y castigado con multa no mayor de $10,000 ó reclusión por no más de un año en una institu-

ción penal, o ambas penas, más las costas del proceso. La Sec. 51 (a) de la referida ley dispone que todo individuo que sea soltero o que sea casado pero que no conviva con su cónyuge, rendirá una planilla, la cual, según la Sec. 53 de la ley en cuestión (13 L.P.R.A. sec. 3053), deberá radicarse en o antes del 15 de abril siguiente al cierre del año natural.

El Art. 559 del Código Penal dice que "La palabra *wilfully* (voluntariamente), aplicada a la intención con que se ejecuta un acto, o se incurre en una omisión, implica simplemente propósito o voluntad de cometer el acto, o de incurrir en la omisión a que se refiere."

En *United States* v. *Murdock*, 290 U.S. 389, 395 (1933), el Tribunal Supremo de los Estados Unidos dijo que el término voluntariamente se refiere a un acto que es intencional, deliberado o voluntario en contradistinción a uno que es casual. "Cuando se utiliza en un estatuto penal, generalmente significa un acto realizado con propósito perverso . . .; sin excusa justificable . . .; temeraria, obstinada y perversamente . . . . El término también se emplea para caracterizar un acto realizado sin razón para creer que es lícito . . . o una conducta marcada por una negligente desatención con respecto a si uno tiene o no derecho a actuar así . . . ."

En *United States* v. *Illinois Central*, 303 U.S. 239, 242 (1938), se dijo por dicho Tribunal Supremo que en los estatutos que establecen ofensas que envuelven vileza, el término voluntariamente se usa generalmente para significar un propósito perverso, una intención criminal o algo semejante. Pero en aquellos que declaran actos que no son de por sí malos, el término se usa con frecuencia sin llevar tal significación. Citando a *Murdock*, supra, dice el Tribunal que el término con frecuencia significa aquello que es intencional, conocido o voluntario en contraste con lo accidental y es empleado para caracterizar "conducta marcada por una negligente desatención con respecto a si uno tiene o no derecho de actuar así."

Dijo el referido Tribunal en *Spies* v. *United States*, 317 U.S. 492, 497 (1942), que "la diferencia entre el dejar voluntariamente de pagar una contribución a su vencimiento, acto que constituye un delito menos grave, y el tratar voluntariamente de frustrarla y evadirla lo que constituye un delito grave, no es fácil de descubrir y definir. Ambos deben ser voluntarios y voluntariamente es un término de variados significados . . . . *Muy bien puede significar algo más cuando se aplica al no pago de una contribución que cuando se aplica a la omisión de radicar una planilla. La mera omisión voluntaria e intencional, distinta de la accidental, de radicar una planilla a tiempo puede cumplir con el requisito de voluntariedad.*" (Énfasis nuestro.) Añadió el tribunal, sin embargo, que cuando se trata de la omisión voluntaria e intencional de pagar una contribución "No esperamos que la voluntariedad en tal caso incluya algún elemento de propósito perverso y de falta de justificación en vista de todas las circunstancias de las finanzas del contribuyente."

En *Sansone* v. *United States*, 380 U.S. 343, 351 (1965), dictaminó el tribunal, en relación con el delito menos grave de no cumplir con una serie de actos especificados por la ley contributiva, en este caso la omisión de pagar la contribución a su vencimiento, que "Este delito menos grave sólo requiere voluntariedad y la omisión del acto requerido, el pago de la contribución a tiempo en este caso. Como lo reconoció este tribunal en *Spies* v. *United States*, supra, la diferencia entre una mera omisión voluntaria de pagar una contribución a su vencimiento . . . y un atentado voluntario de evadir o frustrar una contribución, consiste en que este último delito, grave que es, incluye la omisión voluntaria de un acto, en adición a las omisiones voluntarias que constituyen los delitos menos graves enumerados."

En *United States* v. *Matosky*, 421 F.2d 410 (7th Cir. 1970), se sostuvo una instrucción en un caso de omisión de radicar planilla de contribución sobre ingreso durante tres

años, al efecto de que el único propósito o motivo perverso que el gobierno venía obligado a probar era la intención deliberada de no radicar la planilla que el demandante sabía que debía radicar y que *voluntariamente* significa conducta *voluntaria, o propósito, deliberado e intencional distinto de una conducta accidental, inadvertida o negligente.*

■ En el caso del delito menos grave de no radicar la planilla, la voluntariedad sólo requiere prueba de que el contribuyente dejó de radicar su planilla contributiva intencionalmente no obstante tener conocimiento de tal obligación y no debido a un accidente, error u otra causa inocente, *United States* v. *Schipani*, 362 F.2d 825, 831 (2d Cir. 1966). Prueba de que el contribuyente no llevaba récords tiende a sostener la voluntariedad del acto delictuoso, *Cooper* v. *United States*, 321 F.2d 274, 277 (5th Cir. 1963).

■ En *United States* v. *Fahey*, 411 F.2d 1213, 1214 (9th Cir. 1969), el tribunal concluyó que el Congreso tuvo el propósito de distinguir entre la intención de defraudar (intención que debe ser voluntaria) y la intención voluntaria de no radicar (la planilla) que puede o no puede envolver una intención de defraudar. Dijo el Tribunal: "Si uno intencionalmente deja de radicar una planilla (o de mantener récords o de suministrar información) en los momentos requeridos por ley, con conocimiento pleno que estaba obligado a hacerlo . . . . ¿no sería esto un acto intencional—no de defraudar, pero sí de no radicar la planilla requerida? El Tribunal Supremo ha resuelto que lo es." Cita de *Sansone*, supra, lo siguiente: "El delito menos grave (voluntariamente no radicar la planilla) requiere sólo voluntariedad y la omisión del acto requerido." Reafirmó el tribunal una norma suya adoptada en un caso anterior a los efectos de que "El término voluntariedad según se usa en los cargos de delitos menos grave . . . esto es, el dejar de radicar una planilla contributiva, significa con un propósito perverso o sin funda-

mentos para creer que los actos de uno son lícitos o sin razonable causa o por capricho o con una negligente desatención sobre si uno tiene derecho a actuar así." (Énfasis nuestro.)

No creemos que la norma contraria, adoptada por los tribunales apelativos de los circuitos federales tercero y quinto es la más acertada interpretación del alcance de *Spies,* supra, *Murdock,* supra, *Illinois Central R.R.,* supra, y *Sansone,* supra. En *United States* v. *Vitiello,* 363 F.2d 240 (3d Cir. 1966), el tribunal concluyó que era errónea una instrucción al jurado en un caso de falta de radicar unas planillas de contribución sobre ingresos, redactada en los términos de la norma sostenida en *Fahey,* supra, aun cuando no fue objetada en el tribunal de instancia, por entender el tribunal apelativo que el término voluntariamente estaba limitado por *Murdock,* supra, y *Spies,* supra, en estatutos penales, a actos realizados con un propósito perverso, sin excusa justificable, obstinada, terca y perversamente. Dictamen similar fue emitido en *Haner* v. *United States,* 315 F.2d 792 (5th Cir. 1963).

Concluimos de lo expuesto que en casos del delito menos grave de no radicar la planilla de contribución sobre ingresos, debemos fijarle al término voluntariedad el alcance que se le reconoció en *Matosky,* supra, *Schipani,* supra, y *Fahey,* supra, por reflejar la norma de estos casos, con mayor precisión y exactitud, el significado que se quiso dar a dicho término por el Tribunal Supremo de los Estados Unidos, por no estar dicha norma en conflicto con precepto constitucional alguno, y por adaptarse mejor a las condiciones y circunstancias prevalecientes en esta jurisdicción.

En el caso ante nos, la prueba demuestra que el apelante conocía su obligación de radicar una planilla de contribución sobre ingresos en cada uno de los años 1961 y 1962, aunque le dijo a un agente de rentas internas que no lo hizo por no tener ingresos tributables. La prueba demostró que los tenía en cada uno de esos años y que el apelante necesaria-

mente tenía que tener conocimiento de ello. En cada uno de esos años, aparecen depósitos en la cuenta de ahorros del apelante que no provienen de los premios de la lotería que con inusitada frecuencia el apelante cobró y recibió. Específicamente, en las cuentas de ahorros del Banco de Ponce aparecen unos depósitos no exentos del pago de la contribución sobre ingresos. Además, durante los primeros ocho meses del año 1961, el apelante necesariamente dispuso de fondos suficientes para sufragar sus gastos personales muy en exceso de $800 sin que de la prueba aparezca que tales fondos provenían del ingreso de premios de la lotería. Durante esos ocho meses, el apelante no retiró fondos de su única cuenta de ahorros. De manera que necesariamente los fondos utilizados por el apelante para cubrir tales gastos personales eran de naturaleza tributable.

◼ La anterior prueba justifica concluir que el apelante voluntaria e intencionalmente dejó de rendir una planilla de contribución sobre ingresos durante los años 1961 y 1962. Su conducta demuestra que incurrió en estas omisiones "sin razonable excusa, sin tener razón para creer que eran lícitas" quedando dicha conducta "marcada por indiferencia o desatención" sobre si era o no correcto el dejar de radicar tales planillas.

En vista de lo expuesto, *se confirmarán las sentencias dictadas en este caso por el Tribunal Superior, Sala de San Juan, en 6 de marzo de 1967.*

El Juez Presidente, Señor Negrón Fernández, al igual que el Juez Asociado Señor Santana Becerra, no intervino.