**GOVERNMENT OF AMERICAN SAMOA, Plaintiff**

v.

**JAKE P. KING, Defendant**

No. 785-1972

High Court of American Samoa

Criminal Jurisdiction, Trial Division

February 2, 1973

WILLIAM J. McKNIGHT III, *Chief Justice;* A. P. LUTALI, *Associate Judge;* and APE POUTOA, *Associate Judge.*

## MEMORANDUM, FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

Defendant is charged with willful failure to pay his 1969 American Samoa personal income tax and willful failure to file his 1970 American Samoa personal income tax return in violation of the Internal Revenue Code of 1954, § 7203, 26 U.S.C.A. § 7203, as adopted, Revised Code of American Samoa, § 18.0405. § 7203 provides:

> "Any person required under this title to pay an estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return . . . keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000 or imprisoned not more than 1 year, or both, together with the cost of prosecution."

The case came on for trial on October 11, 1972, and continued through October 12, 1972. After the Government rested, Defendant moved the Court for judgment of ac-

quittal. The motion was denied. Defendant again moved the Court for judgment of acquittal after presentation of all the evidence. We deferred ruling thereon pending further submission of points and authorities.

We are again faced with the task of defining "willful" in context of a tax statute. No court in this jurisdiction has previously been called to pass on the term as used in § 7203. As our ruling is one of first impression, we have more than carefully scrutinized the excellent and exhaustive points and authorities submitted by counsel and the foregoing decisions of the various courts of the United States. However, as counsel correctly points out, the various courts which have considered this question are steeped in disagreement. Defendant contends that "willful" in this context requires "bad purpose" or "evil motive," proffering *Spies v. United States*, 317 U.S. 492 (1943); *United States v. Vitiello*, 363 F.2d 240 (3rd Cir. 1966) (2–1 decision); and *United States v. Palermo*, 259 F.2d 872 (3rd Cir. 1958) as authority. We accept this view in part and reject it in part. *Spies v. United States*, supra, recognized that "willful" is a word of many different meanings and its construction is influenced by the context in which it is used. "It may well mean something more as applied to nonpayment of a tax than when applied to failure to make a return." Id. at 497. We read *Spies*, then, as acknowledging that a different standard applies for failure to file a return than for failure to pay. See *United States v. Jannuzzio*, 184 F.Supp. 460 (D.C. Del. 1960). With respect to failure to file a return, we think that the definition articulated in *United States v. Matosky*, 421 F.2d 410 (7th Cir. 1970), *cert. denied* 398 U.S. 904 (1970) is a correct interpretation, and we hereby adopt it. That case involved a failure to timely file. The Court expressly approved a jury instruction defining "willful" in that context to mean "voluntary, purposeful, deliberate and inten-

tional conduct as distinguished from accidental, inadvertent, or negligent conduct, and that the only bad purpose or bad motive necessary for the Government to prove was a deliberate intention not to file returns which the defendant knew ought to have been filed." Id. at 412. Accord, *United States v. Schipani*, 362 F.2d 825 (2nd Cir. 1966), *cert. denied*, 385 U.S. 934 (1966) (" 'Willfully' under § 7203 calls only for proof that the taxpayer failed to file his return intentionally and knowingly and not through accident or mistake or other innocent cause." Id. at 831.) See also *United States v. Fahey*, 411 F.2d 1213 (9th Cir. 1969). We find support in dictum from *Spies:* "Mere voluntary and purposeful, as distinguished from accidental, omission to make a timely return might meet the test of willfulness." Id. at 497 and 498. To the extent that the language in *United States v. Vitiello*, supra, is contrary to this ruling, with all due deference to the eminent and distinguished jurist, Judge William Hastie, we expressly reject that decision. Thus, we define "willful" in this context to mean knowledgeable, and intentional, and not accidental, inadvertent, or negligent.

　　Failure to pay a tax, on the other hand, partakes of a different standard. Here, we accept Defendant's definition of "willful" to mean, "bad purpose" or "evil motive." We again find support in the language of *Spies:*

> "But in view of our traditional adversion to imprisonment for debt, we would not without the clearest manifestation of Congressional intent assume that mere knowing and intentional default in payment of a tax, where there had been no willful failure to disclose the liability, is intended to constitute a criminal offense of any degree. We would expect willfulness in such a case to include some elements of evil motive and want of justification in view of all the financial circumstances of the taxpayer." Id. at 498.

*Palermo v. United States*, supra, a landmark decision construing "willful" for failure to pay under the Internal

Revenue Code of 1939, § 145(a), a predecessor to § 7203, held that the proper standard requires the existence of a specific wrongful intent—an evil motive or bad purpose. We agree and hereby adopt that construction for failure to pay under § 7203.

Applying the foregoing standards to the evidence before us, we find, conclude, and adjudge as follows:

### FINDINGS OF FACT

a. *Failure to Pay 1969 Income Tax.*

1. On August 18, 1970, Defendant Jake King filed a 1969 American Samoa individual income tax return jointly for him and his wife, J. Rae King. The return was timely filed within the extended period granted by the Tax Division. Attached thereto was a United States individual income tax return for 1969 similarly filed by Defendant. Defendant accumulated a gross income of $12,834.57 which, after adjustments, totaled $11,694.57. $1,286.90 in federal income tax had been withheld from his wages. Defendant owed a federal income tax of $274.57; therefore, he was entitled to a refund of $1,022.33, the difference of his withheld wages from the tax. The total American Samoa income tax was $1,372.82; however, Defendant received a credit of $274.57; thus, the actual tax liability was $1,098.26.

2. Sometime during the first week of October, 1970, Defendant received a refund check from the Treasury of the United States in the amount of $1,022.33. He cashed this check on February 12, 1971 and used the money for investment in *Samoa News*, a newspaper of which Defendant was editor, and for personal living expenses. We discredit Defendant's testimony that he also used funds therefrom to pay his attorney for representation in deportation proceedings, for his attorney testified, and we so

789

credit, that he received no payments of any nature from Defendant during 1971.

3. Defendant was required to pay the entire tax of $1,098.26 by October 17, 1970, at the latest. Defendant received no extension of time in which to pay this tax.

4. Defendant was cognizant of his duty to pay this tax by October 17, 1970; however, he failed to do so. He did make partial payments of $100 respectively on the following dates:

August 30, 1971;
November 29, 1971;
August 8, 1972; and
October 4, 1972.

5. Defendant, in part, refused to pay his 1969 American Samoa income tax during the prescribed period to protest deportation proceedings instituted by the Government of American Samoa against him and to coerce the Government into paying him $375.00 for return air fare to the United States, which according to Defendant, the Government owed him after termination of an employment contract. If he had been deported, Defendant intended to permanently refuse payment of the tax.

6. The United States tax refund check was cashed prior to conclusion of the deportation proceedings and final decision on his $375.00 claim against the Government.

7. Additionally, Defendant failed to pay his 1969 American Samoa income tax during the prescribed period to acquire funds derived from the United States tax refund check for personal financial gain.

8. Defendant's failure to pay his 1969 income tax within the prescribed period was knowledgeable, intentional, and prompted by the bad purpose of depriving the Government of a tax payment at the time required by law; thus it was willful.

b. *Failure to File 1970 Income Tax Return.*

1. Defendant et ux. filed an American Samoa individual tax return for the year 1970 on May 15, 1972. In addition, on that same date, he filed an amended United States individual tax return for 1970. Both returns were prepared by Arthur Westervelt of the Tax Division of the Government of American Samoa.

2. Defendant timely filed his initial United States return in May of 1971, which had been prepared by H & R Block, a tax consultant firm. This firm had prepared his United States returns for many years. He sent his 1970 Wage and Tax Statement (Form W-2) for American Samoa to H & R Block with the intention of having it prepare his American Samoa tax return, as well as his United States tax return.

3. On April 15, 1971, Defendant requested and received an extension to file his American Samoa tax return from H & R Block, he requested a further extension of time until July 15, 1971. The request was submitted and granted on June 14, 1971. Defendant then wrote his wife in the United States and requested the tax information which he had forwarded.

4. In mid-July of 1971, after receipt of the tax information from the United States, Defendant attempted to see Arthur Westervelt for assistance in preparation of his American Samoa tax return. He was informed that Westervelt would not be available for appointment until August 28, 1971. On September 3, 1971, Defendant brought his 1970 United States tax return and his 1970 Form W-2 to Westervelt and requested that he prepare his American Samoa tax return. He agreed to do so, since Defendant's United States tax return did not properly reflect his foreign tax credit. No date was set for the preparation and filing of either return.

5. Neither the Form W-2 nor the United States tax return reflected Defendant's total income acquired in American Samoa for 1970. Defendant received $1,107.00 additional income for service to *Samoa News*, which was disclosed to the Government in records of *Samoa News* submitted by Defendant to the Tax Division, without the issuance of a subpoena, during the first week of July, 1971.

6. Between September 3, 1971 and May 15, 1972, the date the return was filed, Defendant made a number of appointments with Westervelt to discuss the preparation of his tax return; however, Westervelt was frequently unavailable. Westervelt was away from American Samoa for substantial periods of time between those two dates. Whenever Defendant inquired as to the status of his 1970 tax return, Westervelt reassured him that there would be no problem. Defendant frequently discussed his tax situation with officials of the Tax Division during this period.

7. Defendant was required to file his 1970 American Samoa tax return by July 15, 1971. He was never notified of delinquency; however, he was aware that he was required to file within the prescribed period. He had properly filed individual tax returns in 1967, 1968, 1969 and a 1970 corporate tax return for *Samoa News* on August 23, 1971.

8. Defendant's failure to file his 1970 tax return was not willful; although knowledgeable, it was not deliberate and intentional, but was the result of inadvertence and a negligent reliance upon Arthur Westervelt to prepare and file his return, while protecting his time for filing during the process thereof.

CONCLUSIONS OF LAW

a. *Failure to Pay the 1969 Income Tax.*

1. Defendant was a person required to pay personal income tax to the Government of American Samoa. Internal

Revenue Code of 1954, 26 U.S.C.A. § 1, incorporated by reference, Revised Code of American Samoa, § 18.0401.

2. Defendant owed $1,098.26 in income tax for the year 1969. This amount was due the Government of American Samoa within 10 days after receipt of the income tax refund check from the United States Treasury. Revised Code of American Samoa, § 18.0409 (b).

3. "Willful" as used in § 7203 for failure to pay a tax requires an intentional and deliberate omission prompted by a bad purpose or evil motive.

4. Defendant's intentional and deliberate failure to pay his 1969 income tax motivated by the bad purpose of depriving the Government of tax payment at the time required by law is sufficient to constitute "willful" under § 7203. See *United States v. Litman*, 246 F.2d 206 (3rd Cir. 1957) (Hastie, J.), *cert. denied* 355 U.S. 869 (1957). "Punctuality is important to the fiscal system, and these are sanctions to assure punctual as well as faithful performance of these duties." *Spies v. United States*, supra, at 496. Though Defendant's refusal to pay was assertedly for the purpose of coercing the Government to pay him $375.00 return air fare to the United States and to protest the institution of deportation proceedings, the intent to deprive the Government of payment at the time required by law to accomplish these ends is sufficient to constitute "bad purpose." Cf. *People of City of Detroit v. Pillon*, 18 Mich. App. 373, 171 N.W.2d 484 (1959). It is no defense that Defendant objects to the operation of the Government or detests its activities. See *United States v. Porth*, 426 F.2d 519 (10th Cir. 1970), *cert. denied* 400 U.S. 824 (1970); *Ward v. United States*, 344 F.2d 316 (10th Cir. 1965), *cert. denied*, 385 U.S. 1014 (1965); *Swallow v. United States*, 325 F.2d 97 (10th Cir. 1963), *cert. denied*, 371 U.S. 950 (1963), *reh. denied* 372 U.S. 925 (1963). Although the

793

purpose is to only deprive the Government of payment temporarily, it is sufficient to constitute "willfulness." *Sansone v. United States*, 380 U.S. 343 (1965). Nevertheless, Defendant avowed to never pay the tax in the event he was deported from American Samoa, which, obviously, shows more than an intent to temporarily deprive the Government of payment. Moreover, the intent to so deprive the Government does not have to be the predominant motivation; "If the tax-evasion motive plays any part in such conduct the offense may be made out . . ." *Spies v. United States*, supra, at 498. See *Gennaro v. United States*, 369 F.2d 106 (8th Cir. 1966), *cert. granted* on other grounds, *United States v. Magliano*, 336 F.2d 817 (4th Cir. 1964). The sincerity to which Defendant held his asserted purposes in refusing to pay the tax is discounted by the cashing and use of funds from the United States tax refund check for personal purposes prior to the outcome of the deportation proceedings and final decision on his $375.00 claim. Thus, we think that apart from the purposes so enumerated, Defendant had the purpose of evading payment of the tax at the time acquired in order to use the funds to invest in *Samoa News* in hopes of future financial gain. At the conclusion of the deportation proceedings, Defendant would have been able to virtually pay his tax liability with that refund check. By way of observation, it is noted that two years have expired since Defendant's tax obligation arose, and he has not yet discharged that responsibility to his Government.

■ 5. Although Defendant did make partial payment, discharge of a tax liability by voluntary payment does not constitute a bar to criminal liability. *United States v. Ross*, 135 F.Supp. 842 (D.C. Md. 1955); *United States v. Sabourin*, 157 F.2d 820 (2nd Cir. 1946), *cert. denied*, 329 U.S. 800 (1946).

6. Defendant's failure to pay his 1969 income tax constitutes a violation of § 7203, as adopted, Revised Code of American Samoa, §18.0405.

b. *Failure to File 1970 Tax Return.*

1. Defendant was a person required to file a 1970 income tax return with the Government of American Samoa. Internal Revenue Code of 1954, § 6011, 26 U.S.C.A. § 6011, incorporated by reference, Revised Code of American Samoa, § 18.0401.

2. Defendant was required to file his 1970 American Samoa tax return by July 15, 1971.

3. "Willful" as used in § 7203 for failure to file a return means voluntary, purposeful, deliberate and intentional conduct as distinguished from accidental, inadvertent, or negligent conduct.

4. The Government failed to prove the essential element of willfulness. Despite Defendant's knowledge of the time requirements for filing and his failure to comply therewith, this failure was not shown to be intentional or deliberate. Conversely, the evidence presented establishes a pattern of affirmative acts designed to comply with that requirement: Defendant promptly obtained extensions of time and wrote for his tax materials when it became apparent H & R Block had not prepared his return; he attempted to make an appointment with Arthur Westervelt prior to expiration of the time for filing; he submitted his tax information and requested assistance as soon as Westervelt became available for consultation; and he frequently inquired at the Tax Division as to the progress in preparing his return during the period in which he was in default. Admittedly, Defendant went astray in failing to obtain extensions of time and in neglecting to aggressively pursue the preparation of his return; however, these omissions, at best, amount to inadvertence and a negligent reliance on a tax official to protect his time and file his re-

turn. Defendant's reliance on Westervelt's assurances that there was no problem and the absence of notification of delinquency are not characteristics one would ascribe to a model taxpayer, for such a person would examine the records at the Tax Division to insure that he was not in default; however, such conduct falls short of culpability. Defendant's failure to include his personal tax information does not divine, as the Government contends, an intentional failure to disclose; any such though [sic] is disspelled [sic] by the fact that Defendant voluntarily submitted that information in the records of *Samoa News* provided the Tax Division without the issuance of a subpoena. Defendant's failure to timely file his 1970 tax return, although unfortunate, resulted from a bizarre combination of Defendant's negligence and the Tax Division's inadvertence in failing to notify Defendant of his default, and as such, we think that it squarely falls within the "negligent conduct" and "innocent cause" distinguished from willfulness by *United States v. Matosky*, supra, and *United States v. Schipani*, supra.

5. Defendant's failure to file his 1970 tax return did not constitute a violation of § 7203, as adopted, Revised Code of American Samoa, § 18.0405.

It is hereby ORDERED AND ADJUDGED that Defendant's motion for judgment of acquittal of willful failure to file his 1970 income tax return be granted; of failure to pay his 1969 income tax be denied; and that Defendant is guilty of willful failure to pay his 1969 income tax in violation of § 7203, as adopted, Revised Code of American Samoa, § 18.0405.

The Defendant is ordered to present himself for imposition of sentence on December 15, 1972 at 9:00 A.M.
DATED: December 8, 1972.

## JUDGMENT OF COURT

The Defendant having been convicted of a violation of Section 18.0405 of the Revised Code of American Samoa, and the Defendant being present in Court:

(1) It is ordered that the imposition of sentence is hereby suspended for a period of 12 months, and the Defendant is hereby placed on probation for said period and shall report to the Probation Officer as directed.

This probation is subject to the following terms and conditions:

1. Report to the Probation Officer once every month.

2. Be of good conduct and obey all laws applicable to American Samoa.

3. Report any change of address.

4. Pay the balance of any income tax due the Government of American Samoa, plus interest to date, within a period of six months from the date hereof. Such payments shall be made through the Probation Officer in such amount or installments as the Probation Officer shall direct.

5. Pay a fine in the amount of $250.00, plus court costs in the amount of $25.00, through the Probation Officer, at the rate of $75.00 per month, the first of which payment shall be made on or before the 3rd day of March, 1973, and a like amount on or before the 3rd of each consecutive calendar month thereafter, until the full amount of $275.00 has been paid in full.

Dated this 2nd day of February, 1973.