EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| El Pueblo de Puerto Rico<br><br>    Peticionario<br><br>       v.<br><br>Juanita Medina Boria<br>Eddie Miró Castañeda<br><br>    Recurridos | Certiorari<br><br>2007 TSPR 52<br><br>170 DPR \_\_\_\_ |

Número del Caso: CC-2006-1165

Fecha: 20 de marzo de 2007

Tribunal de Apelaciones:

               Región Judicial de San Juan Panel III

Panel integrado por su Presidenta, la Juez Bajandas Vélez, el Juez Aponte Hernández y el Juez Morales Rodríguez

Oficina del Procurador General:

               Lcdo. Luis José Torres Asencio<br>               Procurador General Auxiliar

Abogados de la Parte Recurrida:

               Lcdo. César H. Soto Cintrón<br>               Lcdo. Alfredo E. González Vega

Materia: Inf. Art. 6049-C del Código de Rentas Internas de 1994

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

        v.                     CC-2006-1165

Juanita Medina Boria
Eddie Miró Castañeda

    Recurridos

Opinión del Tribunal emitida por la Juez Asociada señora Rodríguez Rodríguez

San Juan, Puerto Rico, a 20 de marzo de 2007

Este caso nos permite resolver, de forma definitiva, cuál es el foro judicial con competencia territorial para atender los procesos penales instados a tenor con lo dispuesto en el Código de Rentas Internas, específicamente, en relación con el delito de dejar de rendir planilla de contribuciones sobre ingresos.

**I**

El 12 de abril de 2006, el Ministerio Público presentó ante el Tribunal de Primera Instancia, Sala Superior de San Juan, sendas denuncias contra los

acusados de epígrafe por alegadas infracciones al Código de Rentas Internas, sec. 6049(c), 13 L.P.R.A. sec. 8054(c). Las denuncias imputaron que los acusados —la señora Juanita Medina Boria y el señor Eddie Miró Castañeda— alegadamente habían dejado de rendir las planillas de contribución sobre ingresos correspondientes a los años 2000 al 2004, con la intención de evadir o derrotar la contribución impuesta por el Código de Rentas Internas. Se determinó causa probable en todos los casos.

Luego de la determinación de causa para arrestar y señalado en caso para la vista preliminar, los acusados presentaron conjuntamente, el 28 de junio de 2006, una moción solicitando el traslado de los procedimientos al Tribunal de Primera Instancia, Sala Superior de Bayamón. En la misma, éstos arguyeron que la sala con competencia era la de la región judicial de Bayamón. Adujeron de forma conclusiva que por ser el delito imputado uno "de inacción (dejar de hacer)", el mismo se comete en el municipio donde residen los imputados y no en la región judicial donde ubican las oficinas centrales del Departamento de Hacienda. En vista de lo cual y en atención al derecho constitucional que les asiste a ser juzgado por un "jurado imparcial compuesto por doce vecinos del distrito", procedía el traslado a Bayamón. Véase, Constitución del Estado Libre Asociado de Puerto Rico, Art. II, sec. 11. Indicaron también que no existe disposición legal que le confiera

competencia exclusiva al distrito judicial de San Juan para atender casos criminales de evasión contributiva.

La vista preliminar se celebró en la fecha pautada en el tribunal de San Juan. Se determinó causa para acusar y se señalaron los casos para la lectura de la acusación y la vista en su fondo. Al día siguiente, el 29 de junio, el tribunal emitió una breve resolución en la que ordenó el traslado de los casos al tribunal de Bayamón. La resolución dictada sólo aducía como fundamento para el traslado que de los autos surgía "satisfactoriamente" que las causas eran "de la competencia del Tribunal de Primera Instancia, Sala de Bayamón", por lo que el tribunal, "de su propia iniciativa y conforme la Regla 27 de Procedimiento Criminal" ordenaba el traslado a dicha sala.

Recibido el caso en Bayamón, el Ministerio Publico presentó el 21 de julio las correspondientes acusaciones. Así las cosas, el 14 de septiembre, el Hon. Edwin Ruiz Rodríguez emitió, *motu proprio*, una resolución y orden concediéndole a las partes un término para que expresaran las razones por las cuales el caso no debía ser devuelto al distrito de San Juan "por ser la [s]ede con la debida competencia."

El Ministerio Público compareció por escrito al tribunal indicando que procedía el traslado de los casos a la región judicial de San Juan. *A contrario sensu*, los acusados se opusieron al traslado bajo los fundamentos previamente expresados ante el foro judicial de San Juan.

Añadieron también lo siguiente: "el Departamento de Hacienda cuenta con colecturías y oficinas regionales en casi todos los municipios de la isla y definitivamente, en todas las regiones judiciales donde el contribuyente pudiera radicar sus planillas de contribuciones por ingresos." En cuyo caso no existía una obligación legal de rendir las planillas de contribución sobre ingresos en ninguna región en particular por lo que lo razonable era que la región judicial de la residencia de un acusado fuera el foro con competencia.

El 13 de octubre, el tribunal de instancia dictó una resolución y orden devolviendo el caso a la región judicial de San Juan. Devuelto el mismo, San Juan ordenó el reenvío a Bayamón. En esta última resolución se indicaba que "en los casos de no radicación de planillas el delito debe tenerse por ocurrido en el lugar de residencia del contribuyente, pues es allí donde, por regla general, se da la no preparación de la misma (la omisión)." En la resolución y orden se adujo también que la orden de traslado original había advenido final y firme ya que no se había recurrido de ella.

Inconforme, el Ministerio Público acudió en alzada ante el Tribunal de Apelaciones. El mismo día en que se presentó el recurso en alzada, el 4 de diciembre de 2006, el foro apelativo intermedio dictó una breve resolución en la cual se negó a expedir el auto solicitado. La resolución dictada concluyó que la determinación del

tribunal de San Juan era esencialmente correcta. Citando como apoyo nuestras expresiones en *Pueblo v. Rodríguez Zayas*, 137 D.P.R. 792, 797 (1995), indicó que la "esencia del juicio por jurado es que el acusado sea juzgado por un grupo representativo de la comunidad **donde reside**." (Énfasis nuestro.) En vista de lo cual, y ante la ausencia de una expresión legislativa clara sobre la sala con competencia para los casos de omisión de rendir planillas, el derecho a juicio por jurado obligaba a que el caso se ventilase en la región judicial del lugar de residencia del acusado.

En desacuerdo nuevamente, el Ministerio Público a través del Procurador General, acudió ante nosotros el pasado 28 de diciembre de 2006. En su recurso, cuestionó la determinación del Tribunal de Primera Instancia, Sala Superior de San Juan, de referir nuevamente el caso a Bayamón. Pendiente el recurso, el pasado 24 de enero de 2007, el Procurador General presentó una moción en auxilio de jurisdicción señalando que el caso estaba pautado para comenzar el 2 de febrero por lo cual solicitaba la paralización de dichos procedimientos.

El 29 de enero, dictamos una orden dirigida a los acusados para que mostraran causa por lo cual no debíamos expedir el auto solicitado, revocar la determinación del tribunal apelativo intermedio y devolver el caso a la región judicial de San Juan. En auxilio de nuestra

jurisdicción paralizamos la vista pautada para el 2 de febrero.

Oportunamente, los acusados comparecieron ante nosotros y argumentaron, principalmente, que la orden de traslado dictada originalmente en este caso había advenido final y firme por lo que era procesalmente improcedente, de parte del Ministerio Público, recurrir de la orden más reciente dictada por el foro de San Juan.  En apoyo a su posición invocaron nuestros dictámenes en *Builders Insurance Co. v. Tribunal Superior*, 100 D.P.R. 401, 403-404 (1972) y *Seijo v. Mueblerías Mendoza*, 106 D.P.R. 493, 494 (1977).

Contando con la comparecencia de ambas partes nos encontramos en posición de resolver y pasamos a hacerlo conforme intimamos.

## II

Como cuestión de umbral, tenemos que atender el planteamiento esgrimido por los recurridos de que no procede revisar la orden de traslado aquí impugnada, ya que la orden que se dictó originalmente en tal sentido advino final y firme.  Iniciamos, reconociendo que subyacen la determinación de traslado de un caso penal una miríada de factores que no están presentes en las causas civiles.  Con lo cual, no son equivalentes las consideraciones que se sopesan al evaluar la procedencia de una solicitud en tal sentido.  Ya en *Pueblo v. Rodríguez Zayas*, 137 D.P.R. 792 (1995) habíamos indicado que: "[el traslado en la causa

penal] requiere la consideración de elementos que no están presentes en un caso civil." Con ello de trasfondo, vemos porqué no tienen razón los acusados.

Según se desprende de la relación de hechos antes transcrita, el caso de autos refleja un evidente conflicto entre dos regiones judiciales sobre cuál de ellas debe atender el mismo. Tanto San Juan como Bayamón no asumen jurisdicción sobre esta controversia bajo el fundamento que le corresponde la competencia a la otra región judicial. El insostenible conflicto entre las regiones judiciales hacía imperioso la intervención de un tribunal de superior jerarquía para ponerle coto a la incertidumbre evidente que reinaba en instancia.

Adviértase además, que el asunto que provoca esta controversia es uno sobre el cual no nos habíamos expresado anteriormente. Este caso involucra el derecho constitucional del acusado a ser juzgado por un "jurado imparcial compuesto por doce vecinos del distrito." Constitución del Estado Libre Asociado de Puerto Rico, Art. II, sec. 11. Tanto el Pueblo como los imputados deben tener certeza sobre cuál será el lugar donde se han de presentar los cargos criminales y dónde se habrá de ventilar el juicio. Nuestra intervención se releva necesaria para garantizar el derecho que le asiste al acusado bajo nuestro ordenamiento constitucional, así como para cumplir con nuestra obligación de pautar el Derecho. Véase *Pueblo v. Santiago Acosta*, 121 D.P.R. 727 (1988).

Finalmente, destacamos que la controversia que se ha generado en torno al lugar donde se debe celebrar el juicio de los imputados no es de la hechura del Ministerio Público como tampoco lo es de los acusados. Cada uno de ellos ha expresado su preferencia como es natural, y como era de esperarse, no coinciden en su criterio. La situación de difícil resolución que ha suscitado las órdenes y contra órdenes de traslado dictadas por los foros de instancia sólo puede solucionarse con nuestra intervención.

Los factores antes mencionados inciden directa o indirectamente sobre la garantía de juicio justo e imparcial que les asiste a los acusados; así como también, sobre la ordenada tramitación de los casos ante el Tribunal de Primera Instancia. Criterios de evaluación que están ausentes en los casos invocados por los acusados. En atención a lo cual, somos del criterio que nada le impedía al Ministerio Público recurrir en alzada de la última determinación de traslado de Tribunal de Primera Instancia, Sala Superior de San Juan.

Despejado este asunto, pasemos a dilucidar los méritos de la controversia traída ante nuestra atención.

**III**

**A**

La Regla 27 de las Reglas de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 27, dispone que en todo proceso criminal "el juicio se celebrará en la sala correspondiente al distrito **donde se cometió el delito**, excepto lo que en

contrario se provea en estas reglas." (Énfasis nuestro.) Consistente con lo anterior, el artículo 10 del Código Penal de 1974, aplicable a varios de los cargos que penden contra los acusados, establece que **el delito se considera cometido** "[d]onde se ha ejecutado la acción o **donde debía ejecutarse la acción omitida.**"[1] En virtud de lo anterior, **inicialmente debemos determinar dónde se entiende cometido el delito de dejar de rendir planillas de contribuciones sobre ingresos, a fin de fijar la competencia territorial.**

El delito de dejar de rendir planillas de contribuciones sobre ingresos aparece tipificado en la sección 6049 del Código de Rentas Internas, 13 L.P.R.A. sec. 8054. El mismo dispone en lo pertinente, lo siguiente:

> (a). . .
>
> (c). . .
>
> En aquellos casos en que cualquier persona voluntariamente **dejare de rendir**[2] **dicha planilla o declaración** (dentro de los términos fijados por el Subtítulo correspondiente o por reglamentos) con intención de evadir o derrotar cualquier contribución impuesta por este código, en adición a otras penalidades provistas por este Código será culpable de un delito grave[. . . .] (Énfasis nuestro.)

Conforme lo anterior, este es **un delito de omisión**, pues consiste en no entregar la planilla o declaración de

---

[1] El artículo 20 del Código Penal de 2004, aplicable a varios de los cargos que se ventilan en el caso de marras, contiene un lenguaje idéntico al del artículo 10 del Código Penal de 1974, por lo que lo expresado respecto el Código del 1974 es igualmente aplicable al del 2004.

[2] El Diccionario de la Real Academia de la Lengua Española, 22ª ed., 2001, define el verbo transitivo rendir como: "Entregar".

ingresos con la intención de evadir la contribución impuesta. Consecuentemente, para fijar la competencia territorial tenemos que analizar la figura de la omisión punible.

La omisión punible consiste, "en la no realización voluntaria de un comportamiento que es requerido por ley." L.E. Chiesa Aponte, *Derecho Penal Sustantivo*, Publicaciones JTS, 2007, pág. 88. En estos casos, el legislador pretendió "castiga[r] . . . la no realización de una acción." F. Muñoz Conde, M. García Arán, *Derecho Penal*, Tirant lo Blanch, Valencia, 4ta ed., 2000, pág. 269.

El delito de omisión requiere la previa existencia de un deber jurídico que compela la realización de un acto en particular, que el autor tenga la capacidad para realizar tal acción y que, no empece lo anterior, la acción ordenada no se realizó. Chiesa Aponte, *op. cit.*, pág. 89; E. Bacigalupo, *Lineamiento de la teoría del delito*, Ed. Hammurabi, Buenos Aires, 3era ed., 1994, pág. 203. El mismo queda consumado en el momento exacto en que se deja de realizar la acción requerida.

El delito de no rendir planillas de contribuciones sobre ingresos es el típico delito de omisión pura o tradicional. W. LaFave, *Substantive Criminal Law*, Thomson West, 2d ed., vol. I, 2003, sec. 6.2, págs. 434-435. ("[T]here are a number of statutory crimes which are specifically defined in terms of failure to act. [. . .] Illustrative of the former are statutes making it a crime

for a taxpayer to fail to file a tax return…)  El profesor Chiesa Aponte, *op. cit.*, pág. 91, nos apunta que este delito "se consuma en el momento exacto en que el individuo no entrega su planilla cuando le era requerido."

Analicemos entonces dónde el Código de Rentas Internas ordena debe entregarse o rendirse la planilla de contribución sobre ingresos para así fijar la competencia territorial.

El Código de Rentas Internas, sec. 1053, 13 L.P.R.A. sec. 8453, provee para **la fecha y lugar en donde se deberán rendir las planillas de contribución sobre ingresos**. En tal sentido, el inciso (a)(1) dispone que las planillas rendidas **a base del año natural** deberán radicarse en o antes del 15 de abril siguiente al cierre del año natural.[3] **El inciso (b) dispone que éstas "deberán ser rendidas al Secretario" de Hacienda.** Por lo tanto, si el deber imperativo impuesto es rendir o entregar las planillas al Secretario antes del 15 de abril, el delito se consuma en el momento que, llegada la fecha, ello no ocurre.  Es decir, no se le rinden las planillas al Secretario de Hacienda.

Somos del criterio entonces que para efectos del delito de omisión de rendir planillas de contribuciones sobre ingresos según descrito en el Código de Rentas Internas, cuando se habla de rendir las planillas al

---

[3] Ello, claro está, salvo que el contribuyente haya solicitado prórroga para rendir las mismas conforme autoriza el Código de Rentas Internas.  13 L.P.R.A. secs. 8453m (a) (2), (3) y (4).

Secretario a lo que se refiere es a entregar o rendir las mismas en la sede del Departamento de Hacienda. Es allí donde ubican las oficinas centrales del Secretario a quién por disposición de ley hay que rendirle las planillas.

Cabe destacar también, que éste es el lugar de acopio de las planillas de contribuciones. Allí se reciben, se analizan y cuando corresponde, se notifican deficiencias a los contribuyentes. Por todo lo anterior concluimos que el delito de dejar de rendir planillas de contribuciones sobre ingresos se comete en el Municipio de San Juan, sede del Departamento de Hacienda. Por lo que el tribunal con competencia en la causa penal será el Tribunal de Primera Instancia, Sala Superior de San Juan, pues fue en San Juan donde se cometió el delito.

Hay que señalar también que, históricamente, ésta ha sido la tradición en el Departamento de Justicia a la hora de presentar cargos criminales contra aquellos ciudadanos que se alega, incumplieron con su obligación con el fisco; lo que abona a la conclusión a la que llegamos. De ordinario, el Ministerio Público presenta este tipo de acusación en la Sala Superior de San Juan, del Tribunal de Primera Instancia. A poco de repasemos los casos que hemos resuelto relacionados con el delito de no rendir planillas de contribución sobre ingresos, nos percatamos que todos provienen, en efecto, de dicha sala. *E.g.*, *Pueblo v. González Cardona*, 153 D.P.R. 765 (2001); *Pueblo v. Lausell Hernández*, 121 D.P.R. 823 (1988); *Pueblo v. Corales*

*Irizarry*, 107 D.P.R. 481 (1978); *Pueblo v. Tursi*, 107 D.P.R. 717 (1977); *Pueblo v. Rivera Adorno*, 99 D.P.R. 555 (1971); *Pueblo v. Calzada*, 93 D.P.R. 803 (1966); *Pueblo v. Franceschi*, 74 D.P.R. 825 (1953).

Los acusados arguyen en su escrito de mostrar causa, igual que lo hicieron ante los foros inferiores, que toda vez que las planillas de contribuciones "se pueden radicar en cualquier colecturía" y no hay una obligación legal de hacerlo en la región judicial de San Juan, no cabe hablar de un lugar único dónde rendir las mismas. Por lo que lo razonable es que se estime que la competencia territorial le corresponde al lugar de residencia del acusado, secuela de su derecho a un juicio justo e imparcial. No nos convence su razonamiento.

El primer escollo que enfrenta el argumento de los acusados es el propio texto del Código de Rentas Internas. Como repasamos anteriormente, el Código ordena que las planillas se le rindan al Secretario de Hacienda y éste tiene sus oficinas en la sede central de Departamento de Hacienda en el Municipio de San Juan. Como este es un delito de omisión que queda consumado en el momento en que se deja de realizar la acción requerida, es decir, al no rendir la planilla ante el Secretario de Hacienda. Lo lógico es que la competencia territorial le corresponda a la región judicial de San Juan que es donde ubican las oficinas del Secretario.

De otra parte, si bien es cierto que un contribuyente puede rendir su planilla en cualquier oficina o colecturía del Departamento de Hacienda, esto constituye un mecanismo de conveniencia para los contribuyentes, que en nada detracta de **a quién se le rinden las mismas conforme dispone el Código de Rentas Internas**. Y esto es lo imprescindible para determinar dónde se comete el delito. Por otro lado, y como sabemos, una vez las planillas se reciben en las distintas colecturías a través de la isla, las mismas se remiten al Departamento de Hacienda para su procesamiento.

No es pertinente a la resolución de la controversia traída a nuestra atención, como sugieren los acusados, que el Código de Rentas Internas disponga que cuando un contribuyente no esté conforme con una determinación de deficiencia que le ha sido notificada por el Departamento de Hacienda, éste pueda presentar una demanda impugnando tal determinación en la sala correspondiente a su lugar de residencia. 13 L.P.R.A. sec. 8022(a)(3). Ambas causas son enteramente distintas y lo relevante para determinar la competencia territorial en la causa penal, conforme las exigencias del Código Penal, es dónde se comete el delito. El legislador no proveyó para los casos de evasión contributiva una competencia territorial distinta a la provista en el Código Penal.

**B**

Finalmente, tanto el Tribunal de Apelaciones como los acusados invocan el derecho a un juicio justo e imparcial para sostener que la competencia territorial en este caso reside en la Sala Superior de Bayamón.  No tienen razón.

La Constitución del Estado Libre Asociado de Puerto Rico, Art. II, sec. 11, reconoce el derecho a juicio por jurado para los delitos graves.[4]  Dispone dicha sección como sigue:

> "En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por **doce vecinos del distrito**, quienes podrán rendir veredicto por mayoría de votos en el cual deberán concurrir no menos de nueve." (Énfasis nuestro.)

La discusión en el seno de la Constituyente arroja luz sobre la frase "doce vecinos **del distrito**" y nos permite auscultar su significado.  Transcribimos in extenso:

> Sr. González Blanes:  Señor Presidente, . . . [e]l concepto de juicio por jurado es sabido que se entiende que el jurado se compone de 12 personas.
>
> [. . .]
>
> Ahora, resulta a mi entender peligroso decir aquí 'compuesto por 12 vecinos del distrito.'  . . . [M]e parece a mí que debería dejarse a la [Asamblea] Legislativa que determinara de dónde han de seleccionarse las 12 personas que han de

---

[4] Tanto la Ley Orgánica Foraker como la Ley Jones de 1917 guardaban silencio sobre el juicio por jurado, el mismo sin embargo "se estableció por legislación a partir de 1901, limitado a casos por delitos graves."  J. Trías Monge, *Historia Constitucional de Puerto Rico*, Ed. UPR, Río Piedras, 1982, vol. III, pág. 194.  Véase, *Pueblo v. Campos*, 69 D.P.R. 898 (1949); *Fournier v. González*, 80 D.P.R. 262 (1958); *Pueblo v. Rivera Suárez*, 94 D.P.R. 510 (1967).

intervenir en una causa contra un acusado y no usar aquí estas palabras 'del distrito'.

[. . .]

Se. Fernández Méndez: [Sugiero] . . . se inserte: 'quienes serán seleccionadas según se disponga por ley.'

Sr. González Blanes: Acepto la enmienda.

Sr. Presidente: La presidencia quiere saber cómo quedará entonces la enmienda.

Sr. Secretario: Quedará así: 'En procesos por delito grave, el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial compuesto por 12 [. . .] personas que se seleccionarán según se disponga por ley.'

Sr. Reyes Delgado: En contra, señor Presidente. Yo estoy seguro que no es el propósito del representante González Blanes ni del representante Lionel Fernández Méndez el que se pueda disponer por ley **que los delitos cometidos en la vecindad de San Juan puedan ser juzgador por jurados seleccionados del distrito de Ponce**.

[. . .]

Si nosotros dejamos el texto tal como lo ha enmendado el compañero Fernández Méndez . . ., la [Asamblea] Legislativa podrá disponer que sean juzgados los delitos o los acusados que cometen delitos en el distrito de San Juan, por jurados que sean seleccionados en Ponce.

Sr. González Blanes: Me permite el compañero. [. . .] **Cuando se dice aquí 'compuesto de 12 vecinos del distrito' ¿de qué distrito**?

Sr. Reyes Delgado: **La interpretación histórica ha sido que es del distrito donde se comete el crimen. Esa ha sido toda la interpretación o aplicación**.

3 *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, 1953, pág. 1592.

Así se refleja también en el Informe de la Comisión de la Carta de Derechos sometido a la Asamblea Constituyente. Allí se indicó, respecto la sección aprobada:

> La expresión doce vecinos del distrito va dirigida a retener el concepto de unidad geográfica dentro de determinadas comunidades, coincida o no esta vecindad con la correspondiente a las demarcaciones actuales. Se asume que aunque el sistema judicial alude integrado en lo que respecto a asuntos de jurisdicción en un solo distrito no será esto así necesariamente en lo que toca a El Informe de la Comisión de la Carta de Derechos de la constitución de los jurados. **Nos hemos referido a vecinos del distrito y no a vecinos del acusado.** Lo hemos hecho así teniendo enguanta los traslados de juicios y los casos de delitos en que por ley proceda celebrarse el juicio fuera del distrito de residencia del acusado. (énfasis nuestro.)

4 *Diario de Sesiones de la Convención Constituyente de Puerto Rico*, 1953, pág. 2570.

Resulta meridianamente claro que la disposición constitucional sobre el jurado imparcial "compuesto por doce vecinos del distrito", lo que exige es que el jurado lo compongan **vecinos del distrito donde se cometió el delito**. Así lo hemos resuelto en el pasado. En *Pueblo v. Rodríguez Zayas*, *supra*, pág. 797, indicamos que "[t]odo acusado de delito grave tiene derecho a ser juzgado por un Jurado imparcial **compuesto por vecinos del distrito donde alegadamente ocurrieron los hechos imputados.**" (Énfasis nuestro.) En igual sentido, *Pueblo v. Hernández Santana*, 138 D.P.R. 577, 583 (1995)("De ordinario, y sobre ello tampoco debe haber duda, ello significa y conlleva que el acusado deberá ser juzgado en el distrito judicial donde se

alega por el Estado que ocurrieron los hechos delictivos."); *Báez Montalvo v. FD Penitenciaría*, 90 D.P.R. 609 (1964).

En conclusión, no ofende el derecho a juicio justo e imparcial concluir que, para efectos de determinar la competencia territorial correspondiente, dispongamos que el delito de dejar de rendir planillas de contribuciones sobre ingresos se comete en la región judicial de San Juan donde tiene su sede el Departamento de Hacienda.

**IV**

Recapitulando, el delito de no rendir planilla de contribuciones sobre ingresos se comete en el Municipio de San Juan donde ubican las oficinas del Secretario de Hacienda. Procede en su consecuencia que expidamos el auto solicitado y dictemos sentencia revocando la determinación del Tribunal de Apelaciones que autorizó el traslado de la causa de marras al Tribunal de Primera Instancia, Sala Superior de Bayamón, y se devuelva el caso a la Sala Superior de San Juan.

Se dictará sentencia de conformidad.

Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

El Pueblo de Puerto Rico

    Peticionario

       v.

                             CC-2006-1165

Juanita Medina Boria
Eddie Miró Castañeda

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 20 de marzo de 2007

    Por los fundamentos expresados en la Opinión que antecede, los cuales se incorporan íntegramente a la presente se expide el auto solicitado y se dicta sentencia revocando la determinación del Tribunal de Apelaciones que autorizó el traslado de la causa de marras al Tribunal de Primera Instancia, Sala Superior de Bayamón, y se devuelve el caso a la Sala Superior de San Juan.

    Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López no intervino.


                Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo